**PEGUES et al. v. MOSS et al.**

No. 3906.

Court of Civil Appeals of Texas. El Paso.

Feb. 15, 1940.

Rehearing Denied May 9, 1940.

Slay & Simon, of Fort Worth, and Jesse R. Orth, of Odessa, for appellants.

Jones, Turney, Hardie, Grambling & Howell, of El Paso, W. W. James and John Fowler, both of Odessa, for appellee Moss.

Lee Jones, Jr., S. J. Brooks, and W. F. Nowlin, all of San Antonio, and A. W. Walker, Jr., of Austin (Brooks, Napier, Brown & Matthews and Jones & Fly, all of San Antonio, of counsel), for appellee Wentz.

PRICE, Chief Justice.

For a preliminary statement of this case we shall largely adopt that contained in the brief of appellants. Appellants were plaintiffs below and appellees defendants. The parties will be hereinafter designated as in the trial court, except when named specifically.

On August 18, 1930, W. F. Bates died intestate in Ector County, Texas. The following are the chief items, if not all, of the property possessed by him at his death:

1. The Curry Ranch, a tract of 4,800 acres described as Sections 28, 32, 34, 38, 40, 44, 46 and the north one-half of 48, all in Block 44, Township 2—South, T. & P. Ry. Co. Survey, in Ector County;

2. A residence in the City of Odessa, Texas, known as the old Bates' homestead;

3. An 870-acre tract;

4. Sixty-two shares of the stock of the Southland Life Insurance Company;

5. Shares of stock in the Citizens National Bank of Odessa, Texas, of the par value of $12,000.

Plaintiffs are the sole surviving heirs of W. F. Bates, deceased. Letters of administration were issued on the estate of W. F. Bates September 9, 1930, and the estate was continuously in administration from said date through January 2, 1937.

On June 29, 1936, L. S. Webb, as administrator of the estate of W. F. Bates, deceased, made a private sale of all of the property then belonging to said estate to the defendant Moss, and thereafter said Moss executed an oil and gas lease. on Section 28 (a part of the 4,800-acre Curry Ranch) to an agent of defendant Wentz, and later such agent, by formal assignment, placed said oil and gas lease in the name of defendant Wentz.

This suit was instituted in the District Court of Ector County by plaintiffs against defendants Moss and Wentz, seeking to have their alleged equitable interest in and to those portions of the Curry Ranch, respectively, held by said defendants, fixed and established, and to have a full and complete accounting as to all rents and revenues derived therefrom, and generally against the defendant Moss for damages on account of the alleged frauds practiced by him. Plaintiffs' amended petition, upon which they went to trial, was divided into four alternative counts. It was alleged in this petition that defendant Wentz had purchased Section 28 with notice of the equitable right, title and interest of the Bates heirs therein, and he was not an innocent purchaser.

Defendant Moss, in his second amended answer, in addition to numerous special exceptions and a plea of not guilty and a general denial, specially alleged the manner and method in which he had acquired the Curry Ranch from the administrator, Webb, and he further alleged that he had thereafter instituted a suit in trespass to try title against the Bates heirs, among others, and obtained a judgment covering the Curry Ranch; he further pleaded several matters in estoppel.

Defendant Wentz answered by numerous special exceptions, by general denial and a plea of not guilty, and specifically denied that he had any knowledge of the Bates heirs' equitable interest, if any, in the property; but, on the contrary, he

alleged that he had purchased on the basis of certain statements and representations made to him by the plaintiff Emily Pegues, and that he bought in good faith and for value, had drilled upon and developed said Section 28.

Defendant Moss and Wentz each, by cross action, set up a formal action in trespass to try title. Plaintiffs filed supplemental petitions in response to the answers and cross action of Moss and Wentz.

The trial was before a jury. At the termination of the testimony the court granted the motion for an instructed verdict of defendant Wentz. The case was submitted to the jury as between plaintiffs and defendant Moss on special issues. A verdict was returned answering some of the special issues submitted, and leaving a number of special issues unanswered. The trial court, on the basis of the instructed verdict in favor of Wentz and the verdict as returned and accepted, entered a judgment denying plaintiffs relief of any kind, and adjudging a recovery on behalf of both defendants on their cross action in trespass to try title.

Plaintiffs in due time filed motion for new trial and same was overruled. Appeal was duly perfected and the case is here for review.

In substance, it is urged by plaintiffs that the verdict was insufficient to support the judgment entered; that reversible error was committed in the manner of the drawing of the jury; that reversible error was committed in the court's ruling on plaintiffs' special exception to paragraph twenty-seven of the first amended answer of defendant Moss as to the contingent interest held by plaintiffs' attorney in any recovery; that the court erred in instructing a verdict in favor of defendant Wentz. These alleged errors are all raised by sufficient assignments supported by apt propositions.

In view of the fact that by counter proposition defendants, in substance, urge that, while not conceding error as to the matter of the court's ruling on the special exception or as to the drawing of the jury, if mistaken, it was harmless, for the reason that defendants were each entitled to an instructed verdict. We shall consider the assignments as to the drawing of the jury and the ruling on the special exception last. It might be well to note here the basis of the counter proposition that the judgment in favor of defendants should have been instructed is based largely on the judgment in favor of Moss against plaintiffs in the trespass to try title suit subsequent to the alleged accrual of the rights of plaintiffs. Defendants have other counter propositions as to said two matters which also will be discussed.

A recital of undisputed facts in the cause will aid in the consideration of the issues tendered by this appeal.

At the time of his death W. F. Bates was president of the Citizens National Bank of Odessa. After his death the bank continued its operation with Henry Pegues, then husband of plaintiff Emily Pegues, as president. This bank failed and was taken over by a receiver appointed by the Comptroller of the Currency. Sometime in the year 1931, subsequent to the closing of the bank, Crane County filed suit against the Citizens National Bank as principal, and George F. Bates, administrator of the estate of W. F. Bates, deceased, R. N. Henderson, Henry Pegues, F. A. Henderson, Mrs. Lula Satterwhite and Lee Satterwhite. The defendants, other than the bank, were sought to be held to the liability of sureties on a bond securing Crane County as to its deposits in said bank. Also, at about the same time, Crane County filed another suit against the Citizens National Bank, as defendant, George F. Bates, administrator of the estate of W. F. Bates, deceased, F. A. Henderson, Lula Satterwhite, Lee Satterwhite and Henry Pegues. In the suit first mentioned, on the 18th day of November, 1931, the court, upon a trial, entered judgment against all of the defendants, except Lula Satterwhite and Lee Satterwhite, in the sum of $27,186.13, to bear interest from that date at the rate of six per cent per annum. This recovery was for the use and benefit of the school funds of Crane County. A recovery over against the Citizens National Bank was decreed in favor of the defendants other than the Satterwhites. The judgment, insofar as same affected the estate of W. F. Bates, was ordered certified to the County Court; further ordered that the defendants against whom judgment was recovered be subrogated to the claim held by the county against Embry, receiver of the Citizens National Bank, and that the judgment be certified to said Embry, receiver, for allowance out of the pro rata.

payment of dividends accruing to Crane County.

In the other suit judgment was entered on the 18th day of November, 1931, in favor of the plaintiff against George F. Bates, administrator, F. A. Henderson, Lula and Lee Satterwhite, Henry Pegues and H. D. Cody in the sum of $25,943.84, said sum to bear interest from that date. The defendants were held as sureties on a bond given to Crane County securing its deposits in said bank. Judgment over was given the said defendants as to defendant Citizens National Bank, and provision was made for certification to the County Court and to the receiver of the Citizens National Bank.

Appeal was perfected from these judgments, but same were finally affirmed by the Supreme Court in the latter part of January or the first part of February, 1936.

At some time during the pendency of the litigation aforesaid Henry Pegues was appointed as administrator to succeed George F. Bates. In the litigation aforesaid defendant Paul Moss had represented the Citizens National Bank. During the pendency of the cases aforesaid on appeal the Citizens National Bank paid a dividend to depositors. The dividend to Crane County amounted to the approximate sum of $12,000. This dividend was paid to Crane County and applied against the bank's liability as the depository of the county on these judgments. The date of this payment does not clearly appear from the evidence.

After the two judgments aforesaid had become final, defendant Moss entered into negotiations with the Commissioners' Court of Crane County for the purchase of same. On the 9th day of March, 1936, in consideration of $12,000 paid by Moss, the Commissioners' Court of Crane County assigned the two judgments to defendant Moss, and likewise the certificates of deposit issued by the receiver of the Citizens National Bank to the county.

Defendant Moss, in the purchase of these judgments, used $4,200 of his own money; the balance of $7,800 was furnished by F. A. Henderson, affectionately known by his neighbors as "Uncle Tess." F. A. Henderson was jointly and severally liable on the two judgments as a surety. The agreement between defendant Moss and Henderson as to the purchase of the judgments by Moss is not entirely clear. It may be, however, fairly inferred that the agreement was, in substance, that if Moss acquired the judgments, the said Henderson was to be entirely released therefrom.

On the 12th day of March, 1936, defendant Moss executed and delivered to F. A. Henderson a release discharging him from any and all further liability of every kind and nature by reason of the judgments insofar as Henderson or his heirs were concerned, and releasing all judgment liens against Henderson by virtue of the judgments aforesaid. However, it purported to reserve to Moss all rights as legal holder and owner of said judgments against the Citizens National Bank and the other defendants in said judgments.

On May 16, 1936, a purported contract was entered into by and between Emily Pegues, purporting to act as guardian, Willie Martin, as receiver for the bank, and defendant Moss, that the property of the Bates' estate was to be sold, and if defendant Moss acquired same on bids not exceeding the amounts of his claims against the estate, that Moss was to retain the Curry Ranch and deed to Emily Pegues, as guardian, the 878-acre tract southeast of Odessa, and to Hattie Joe Bates, one of the plaintiffs herein, the home place in Odessa. Martin, as receiver, was to receive the certificates of deposit held by Moss as assignee of Crane County, and to release claim for $12,000 against the estate of W. F. Bates, deceased.

This claim for $12,000 against the estate arose in the following manner: As it has been before stated, W. F. Bates at the time of his death had stock in the Citizens National Bank of the par value of $12,000. An assessment was made on this stock against the estate of Bates in that sum, and it was held as an asset of the receivership. There had, it appears, been paid thereon previously something like $5,000. The source of this payment was the sale by the administrator of the Bates estate of a three-eighth mineral interest in part of the Curry Ranch. The date of this payment is not shown nor the date of the assessment. In consummation of this contract the receiver conveyed to Moss the said claim for $12,000 against

the Bates estate and Moss surrendered the two receiver's certificates of deposit to the receiver Martin.

At the time of this transaction on May 16, 1936, Henry Pegues was administrator of the estate of W. F. Bates, deceased, but thereafter resigned.

On the 16th day of June, 1936, L. S. Webb was appointed administrator de bonis non upon the estate of W. F. Bates deceased. Bond was required in the sum of $5,000. Shortly thereafter Webb took the oath as administrator and filed the bond required, defendant Moss being one of the sureties on his bond. On the 18th day of June, 1936, Webb, as administrator, filed application to sell the Curry Ranch, the home place, the 878 acres before referred to, and the stock in the Southland Life Insurance Company. The 29th day of June, 1936, was set for the date of hearing on the application. On the 29th day of June, 1936, the court entered an order that the administrator was authorized to make a private sale to Paul Moss of said lands and the sixty-two shares of the Southland Life Insurance Company stock for the sum of $37,000, to be paid in cash, authorizing him to make conveyance on the payment of the money. On the 30th day of June, 1936, Webb, as administrator, reported that he had sold the property to Paul Moss for the sum of $37,000, subject to taxes, State debt and interest. On the 6th day of July, 1936, the Probate Court entered an order confirming such sale. On the 7th day of July, 1936, Webb, as administrator, executed to Moss a deed in conformity with his authority to sell conveying the property in question to defendant Moss. Defendant Moss delivered a receipt to the administrator Webb in the sum of $37,000 in cash.

On the 16th day of July, 1936, defendant Moss executed and delivered to Hattie Joe Bates a quitclaim deed to the Bates home place.

On the 28th day of December, 1936, defendant Moss, joined by his wife, conveyed to Emily Pegues the 878 acres hereinbefore referred to.

On the 20th day of October, 1936, Moss, defendant here, as plaintiff, filed in the District Court of Ector County, Texas, an action in trespass to try title against all the plaintiffs here and against Will A. Martin, as receiver of the bank, and L. S. Webb, administrator de bonis non of the estate of W. F. Bates, deceased, and against numerous other parties. Citation was perfected as to all of the defendants. Henry Pegues, however, filed a waiver of citation. None of the plaintiffs here, defendants in the trespass to try title suit, filed an answer, except that the court appointed a guardian ad litem for the minor defendants, Emily Pegues, as guardian, not having answered for them. This suit was a formal action in trespass to try title, the number thereof was 1233.

On the 10th day of December, 1936, judgment was entered in the cause aforesaid adjudging recovery by Moss of the three tracts of land aforesaid against all of the defendants.

On the 28th day of December, 1936, Paul Moss, joined by his wife, executed and delivered a deed conveying the Bates' home place to Hattie Joe Bates.

On the 4th day of August, 1936, Paul Moss and wife and York & Harper, Inc., as lessors, executed and delivered an oil and gas lease to Leigh Taliaferro, the agent of defendant Wentz, on all of Section 28, Block 44, Township 2—South, T. & P. Ry. Co. Survey. A one-eighth royalty interest was reserved in favor of the lessors. It is the usual oil and gas lease.

At the time of the entry of the judgment in the trespass to try title suit instituted by Moss against plaintiffs herein and others, several judgments were abstracted in Ector County against several of the heirs of W. F. Bates, deceased. Martin, as receiver of the bank, held judgments against Bob Bates, Henry Pegues, George Bates, Hattie Joe Bates and Katherine Bates Inghram. There was also a mortgage on file signed by the Bates heirs, other than the minors, securing $75,000 in favor of T. G. Hendricks. There was property in addition to the interest of the Bates heirs securing the indebtedness evidenced by this deed of trust.

Plaintiffs contended throughout that before defendant Moss acquired title to the two judgments in question that, acting through Emily Pegues, they had employed him as an attorney to attempt to obtain some adjustment of the judgment indebtedness against the estate to the end that something might be salvaged for the heirs; that defendant Moss agreed to take as compensation for such services twenty per cent of any amount he might save for the

heirs. Defendant Moss denies this in its entirety and that he ever acted as attorney for plaintiffs in this connection. Before defendant Wentz purchased through his agent he had notice that plaintiffs claimed that Moss had acted as their attorney in acquiring the judgments against the Bates estate. However, before taking the lease on Section 28, to which Moss was a party, defendant Wentz' agent had been apprized by Emily Pegues that she had settled matters with defendant Moss. Wentz, after the rendition of the judgment in the trespass to try title suit of defendant Moss against the plaintiffs herein, expended large sums of money in the improvement of Section 28, developing oil thereon. These expenditures were to the amount of at least $300,000.

The first special issue submitted to the jury by the court was as to whether defendant Moss had agreed with Emily Pegues to act as attorney for the Bates heirs to work out the judgments of Crane County against the Bates estate. The jury answered this question in the negative.

They found that prior to May 16, 1936, defendant Moss represented to plaintiff Emily Pegues that he was the sole and rightful owner of the Crane County judgments and certificates of deposit.

Number three was not answered. It was as to whether such representation was a material inducement to Emily Pegues to enter into the contract of May 16, 1936.

Number four was unanswered. It sought a finding on whether or not Emily Pegues would have entered into the contract of May 16, 1936, but for the representation submitted in number two.

Number five was unanswered. It submitted as to whether or not prior to May 16th Moss represented to Emily Pegues that plaintiffs would have to take what he offered or he would foreclose the Crane County judgments.

Number six was unanswered. It submitted as to whether or not the representation inquired about in number five was a material inducement to plaintiff Emily Pegues to enter into the contract of May 16th.

The jury found as to special issue number seven that Paul Moss, before the contract of May 16th, did not disclose to Emily Pegues that he obtained $7,800 from F. A. Henderson to pay on the purchase of the Crane County judgments.

Number eight, that prior to May 16, 1936, Emily Pegues had no knowledge that Henderson had furnished Moss $7,800 to pay on the purchase of the Crane County judgments.

Number nine was in substance they did not find from a preponderance of the evidence that Emily Pegues was without knowledge before December 7, 1936, that Moss had obtained approximately $7,800 from Henderson to pay on the purchase of the Crane County judgments.

Number ten was answered by the jury in the negative. It was that they did not find from a preponderance of the evidence that Emily Pegues would not have executed the contract of May 16th had she possessed knowledge that the defendant Moss had obtained approximately $7,800 from Henderson to pay on the purchase of the Crane County judgments.

To number eleven the jury answered yes, finding that after March 9, 1936, and prior to the execution of the contract of May 16, 1936, Moss represented to Emily Pegues that he had the legal right to purchase the Crane County judgments and depository certificates.

Number twelve was unanswered. It submitted whether the matter inquired about in number eleven were material inducements to plaintiff Emily Pegues to enter into the contract of May 16th.

As to special issue number thirteen the jury found that defendant Moss, prior to December 7, 1936, represented to plaintiff Emily Pegues that there was no necessity for plaintiffs to file an answer in the trespass to try title suit.

Number fourteen found that the plaintiffs did not fail to file answers in that suit in reliance upon the said representation of defendant Moss.

Number fifteen was that the jury did not find that Emily Pegues filed a waiver and disclaimer signed by Henry Pegues in reliance upon the representation submitted in issue number thirteen.

Sixteen was unanswered. It sought a finding as to what was the fair market value of the oil and gas lease and royalty on the Curry Ranch on or about March 1, 1936.

Seventeen was unanswered. It sought a finding as to the market value of the Curry

Ranch exclusive of the mineral rights on or about March 1, 1936.

Number eighteen, unanswered, sought a finding as to the fair market value of the 878-acre tract on or about March 1, 1936.

Number nineteen, unanswered, sought a finding as to the fair market value on March 9, 1936 of the Bates' homestead.

Despite the unanswered issues submitted the court received and accepted the findings as above indicated as a verdict and entered judgment thereon.

Beyond question, the main and controlling issue in this case was as to whether or not the relation of attorney and client subsisted between defendant Moss and plaintiffs after the rendition and affirmance of the judgments in favor of Crane County. If this relationship subsisted, as claimed by plaintiffs, defendant Moss was throughout the transaction, insofar as plaintiffs' interests were involved, a trustee. If he was not their attorney, he did not owe them this duty. The gravamen of the cause of action asserted by the plaintiffs is breach of trust by the defendant Moss.

 Now let us go back and review the situation as it existed from the time of the affirmance by the Supreme Court of the judgments in the cases instituted by Crane County against the bank and the Bates estate. It was definitely and finally determined by these judgments that the Bates estate was liable to the county in the aggregate of said two judgments in the sum of $53,129.97, the said judgments bearing interest at the rate of six per cent per annum from the 18th day of November, 1931. The prime obligor on the judgments was the Citizens National Bank; the other obligors were sureties for the bank. Each surety was liable to Crane County for the entire amount; each was entitled to exoneration from the principal for anything he might be compelled to pay on the judgments; each surety was entitled to contribution from his co-sureties for anything he might have to pay on the judgments above his aliquot part thereof. The receiver for the Citizens National Bank was bound to pay anything realized on the deposits of Crane County on the judgments. While these cases were pending on appeal $12,000 was paid on the judgments and the enforceable amount thereof decreased to that extent. The statements of facts, or at least the briefs, do not show the date of this payment of the $12,000. When the

judgments were assigned by Crane County to defendant Moss he acquired no more right than the county had. In fact in the acquisition of the judgments by virtue of his contract with Henderson he had no right to enforce same against him. If the release as to Henderson had no other effect than to prevent Moss from enforcing same against him, it did not release the right of contribution from Henderson to the co-sureties paying more than their aliquot part of the judgments. Moss, at the time of the release, was the owner of the judgments. He executed a release discharging a co-surety with the Bates heirs. This release was in writing reserving his rights against other parties. We are inclined to the view, however, that this did not release the judgments as to the co-sureties; likewise, in and of itself, it would not release the right of contribution against Henderson by a co-surety compelled to pay more that such surety's aliquot part of the judgments. See Merchants' National Bank v. McAnulty, Tex.Civ.App., 31 S.W. 1091.

 As to the situation on May 16, 1936, the date of the purported contract between plaintiff Emily Pegues, as guardian defendant Moss and receiver Martin, let us take the feature of the contract between Martin, receiver, and defendant Moss. Moss agreed and did convey to Martin, as receiver, the Crane County certificates of deposit and claimed to acquire the $12,000 assessment on the stock of the bank—the $12,000 assessment against the Bates estate, although by the terms of the contract this stock assessment was to be released. These certificates of deposit were held in trust by Moss for application on the judgments. Brandt on Suretyship, vol. 1, § 482. In any event, even though Moss held full title to the judgments, the value of these certificates should have been credited on same. It may be if the value of these certificates be credited on other indebtedness of the Bates estate it could matter little to the Bates heirs. This, however, was not done. The Crane County judgments were presented for their face value and likewise the $12,000 stock assessment. It is in evidence that sometime subsequent to this assessment the certificates of deposit paid a dividend of something over twenty-five per cent additional. However, what this dividend would have been had the Crane County judgments remained as liabilities against the bank does not appear. Defendant Moss having released assets of

the principal debtor, we think it was incumbent upon him to clearly show the value thereof or there might be a release of the sureties for his debt, and most certainly there was a release to the extent of the value of the certificates of deposit.

■ Plaintiffs complain that the judgment is not sustained by the verdict for the reason that the issues were not answered showing the invalidity of this contract as to Emily Pegues. The contract does not purport to bind anyone but Emily Pegues as guardian. No authority is shown on her part to make this contract as such. Hattie Joe Bates did not sign the contract. Of itself, the contract was not binding on any of the Bates heirs. The issues submitted as to this contract were entirely immaterial, in our opinion. We do not mean to hold that it might not have an important and evidentiary bearing on the ultimate issues in the case. Moss, it is sure, acquired no legal rights as against the Bates heirs by virtue of the contract. It may or may not have been the means by which Moss secured their quiescence in the subsequent probate proceedings and in the subsequent trespass to try title case.

■ A determination of the legal rights of Moss after the purchase of the Crane County judgments is necessary. This is rendered necessary on account of his admitted relationship to Henderson, a party to the judgments, and his alleged relationship to plaintiffs as attorney. The agreement between defendant Moss and Henderson was that Henderson should furnish $7,893 of the $12,000 to purchase the judgments and Moss the balance. In consideration of this payment Henderson was to be given legal immunity from the judgments. Henderson could have obtained legal immunity from the judgments by paying same. A release from the owner of the judgments and from his co-sureties would have given him legal immunity. If the judgments were held by Moss in trust for him this likewise would have given him legal immunity with the right of exoneration from the bank and contribution against his co-sureties as to the amount paid by him for the judgments. The Bates heirs were not parties to these judgments. They would have been, had they acquired same, enforceable for the amount unpaid thereon. If the Bates heirs had the legal title to the judgments or an undivided interest therein, to the extent of such interest they could have enforced same against Hender-

son. The situation would have indeed been anomalous had Moss held the judgments partly in trust for the Bates heirs and partly in trust for Henderson. On behalf of the Bates heirs he would have been entitled to enforce same against Henderson. This situation did not and could not exist. In our opinion the real situation was that Moss held the judgments in trust for Henderson. The rights of Moss in this event were the rights of Henderson. These rights were exoneration from the bank for the $12,000 paid, and, in the event exoneration was not obtained, contribution from co-sureties. The situation was this: The certificates of deposit which were to be applied to the judgments would, in all events, repay Moss for the money advanced. There was the right of contribution. This was well secured by the assets of the Bates estate. It was certainly clear that $12,000 at least could be realized on the judgments. In this event defendant Moss would receive the sum of $7,893 in addition to the money he had advanced. He would have given legal immunity to Henderson and, if attorney for the Bates heirs, efficiently served them. If the $7,893 paid by Henderson was not held in trust by Moss but was simply a loan, the rights of co-sureties, if they paid the judgments, to contribution would have been entirely unimpaired. Henderson might have paid his $7,893 to Moss and then by Moss's own acts with reference to the judgments been compelled to have paid more than that amount.

We believe that the authorities cited below tend in a general sort of way at least to support our conclusions as to the rights of Moss with reference to the enforcement of the Crane County judgments. Freeman on Judgments, 5th Ed., § 1133; Deleshaw v. Edelen, 31 Tex.Civ.App. 416, 72 S.W. 413; Tarlton v. Orr, 40 Tex.Civ.App. 410, 90 S. W. 534; Hadad v. Ellison, Tex.Civ.App., 283 S.W. 193.

If we are correct, what then was the condition of the Bates estate? The Bates estate would then owe the stock assessment, less the $5,000 paid thereon, and on the Crane County judgments be liable for contribution in the maximum sum of $6,000. The inventoried value of the Bates estate was at all times approximately $37,000. There seem to have been no other claims in substantial amounts against the Bates estate.

■ Let us return again to the contract of May 16, 1936, and consider it from the

standpoint of attorney and client as this issue was in the case. Moss claimed to have acquired the $12,000 stock assessment against the Bates estate, although in terms the contract says it was released. If Moss was the attorney for the Bates heirs, if he did acquire the claim, the most elemental good faith prevented him from using it to their detriment. By this contract he released the receiver from further liability on the judgments and practically speaking the bank, for all its assets were in the hands of the receiver for pro rata distribution to its creditors. Even if Moss had purchased these judgments unhampered by any duty to either Henderson or the Bates heirs this act would have amounted at least to a credit on the judgments for the value of the certificates of deposit. Adopting the theory that the assessment claimed was acquired by Moss, he acquired same with assets he was legally bound to apply to the judgment held by him against the estate.

We have said as to the Bates heirs that this contract of May 16th was not binding because not signed by them, and was only signed by Emily Pegues as guardian for the two minor heirs. In scope the contract provides for the entire distribution of the assets of the Bates estate, the contemplated administrator's sale to be in lieu of a deed from the Bates heirs.

The action contemplated by the instrument of May 16, 1936, was carried out. An administrator was appointed and the property sold to Moss for a purported consideration of $37,000. In accordance with the contract the administrator did not receive the compensation provided by law, but was paid the sum of $100 by Moss.

Now, assuming, for the purpose of this discussion only, that Moss was the attorney for the Bates heirs, let us further consider the situation. If we are correct in what we have heretofore said in relation to the Crane County judgments at the time of this sale the Bates estate was practically free from debt. The result is that by virtue of the administrator's sale on an investment of $4,200 he acquired property belonging to his clients, or former clients, of the inventoried value of $19,000 and also the sum of $1,500 in cash. Hattie Joe Bates received property of inventoried value of $5,000; the minor plaintiffs property of the inventoried value of about $10,000; the other Bates heirs received nothing as a result of the contract of May 16th and the ensuing administrator's sale.

Every act of the defendant Moss with reference to the indebtedness of the Bates estate was to magnify rather than to minimize same. His attitude at the time of the contract of May 16th was that he was entitled to collect the face of the judgments. Further, that after the contract of May 16th he had an additional claim of $12,000 against the estate. If he was untrammeled by the relationship of attorney and client for the Bates heirs, he was entitled to deal at arm's length with them and with the estate. If he was attorney for the Bates heirs the apparent indebtedness of the Bates estate could not injure them. It could not injure them for the reason they had title to the property and the debts against the estate were held in trust to reimburse Moss for his expenditures and compensation for his services.

■ Defendant Moss takes the position that plaintiffs are barred from relief on the ground that they do not come into court with clean hands. At all relevant times here there were judgments of record in various amounts against the Bates heirs other than the minors; further, there was an apparent encumbrance of $75,000 against the interests of the Bates heirs other than the minors in this property. The administrator's deed certainly conveyed the legal title in and to this property. The title of the Bates heirs was, of course, subject to the debts of their ancestor. In regard to the deed of trust there is a warranty clause therein that would perhaps leave the property, if reacquired by the signers thereof, subject thereto. It does not appear that the debt secured by this deed of trust has not been paid. There is or was other property securing this same indebtedness, the amount and value of which do not appear. The judgment or judgments against Henry Pegues were, of course, unaffected by either the administrator's deed or the subsequent judgment in cause 1233. If the judgments had the quality of a lien same would perhaps attach to any real estate thereafter acquired by them. If fraud there was in the contract of May 16, 1936, the administrator's deed and the subsequent judgment, the minor plaintiffs were not active participants therein. However, it may be argued that they were beneficiaries. Emily Pegues seems to have acted for all of the Bates heirs. If fraud there was they might, however, be held accountable for her acts. In any event, we think it was a question of intention. If, un-

der the circumstances of this case, this is a defense, we do not believe the evidence is so clear and convincing that the question could be taken from the jury. This theory was neither pleaded nor submitted on behalf of the defendant. There is no evidence that the Bates heirs were not at all times perfectly solvent. The judgment in cause No. 1233 certainly did not have the effect of paying and discharging any of the indebtedness of the Bates heirs. Whether it had any effect as discharging any liens held against plaintiffs here, co-defendants there, it is not necessary to here consider.

We are of the opinion that unless the judgment in cause No. 1233 barred plaintiffs from asserting their rights here asserted that as between plaintiffs and defendant Moss at least there were questions for the jury. Ivey v. Neyland, Tex.Com. App., 25 S.W.2d 313; Baird v. Laycock, Tex.Civ.App., 94 S.W.2d 1185.

Cause No. 1233 was in trespass to try title with the stereotyped allegations appropriate to such a suit. Defendant Moss was plaintiff there and plaintiffs here, with various other parties having on file liens against the real estate of various Bates heirs, defendants; also as party defendants were Martin, the receiver of the Citizens National Bank, and Lewis, the administrator of the estate of W. F. Bates.

Defendants take the position that the effect of the judgment was to bar all causes of action here asserted by plaintiffs. In support of this position, among other cases, they cite the case of Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, as to the effect of a judgment in trespass to try title. Plaintiffs take the position that the judgment in no way affected the equitable rights here asserted. In substance the position, as we understand it, is that not having such title on the date of the judgment as would entitle them to judgment for the lands involved in that suit it was not incumbent upon them to set up any equities therein. On the date of the filing of the suit and at the date of the judgment they assert that they did not have title—only the right to acquire title. In support of their position the case of Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745, 107 Am.St.Rep. 596, is cited.

Article 7391, R.S.1925, is as follows: "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action."

The judgment in cause No. 1233 so far as plaintiffs here are concerned was practically by default. It is true that the minor defendants there answered by guardian ad litem, but only a general demurrer and general denial were filed on their behalf.

In determining the scope of the issues determined by a judgment in favor of plaintiffs certainly all facts well pleaded in the petition which are necessary to sustain the judgment rendered may fairly be said to have been adjudicated. Oldham v. McIver, 49 Tex. 556; Philipowski v. Spencer, 63 Tex. 604, 607; James v. James, 81 Tex. 373, 16 S.W. 1087; Manning v. Green, 56 Tex.Civ.App. 579, 121 S.W. 721, writ refused; Vaughan v. Morrison, 55 N.H. 580.

The above proposition is true as to a judgment by default. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195, citing Boileau v. Rutlin, 2 Exch. 665, 681; Hughes v. Alexander, 5 Duer 488, 493, 12 N.Y.Super. 488; Manning v. Green, supra.

Now it is clear that plaintiffs are barred from asserting at this time any title, legal or equitable, which they held on the date of the filing of cause No. 1233. In Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, 569, it is said: "In trespass to try title brought in statutory form the plaintiff asserts that he has the title and is entitled to the right of possession. * * * When the ordinary judgment is entered there cannot remain outstanding in the losing party an opposing title. The decree announces that facts appeared on the trial which converged and combined in the winning party all of the rights of both plaintiff and defendant."

An equitable title is the present right to the legal title. Tanner v. Imle, Tex.Civ.App., 253 S.W. 665, 667; Wyatt v. Meade County Bank, 40 S.D. 111, 166 N.W. 423.

Such an equitable title is available in the statutory action of trespass to try title. Easterling v. Blythe, 7 Tex. 210, 56 Am.Dec. 45; Groesbeeck v. Crow, 85 Tex. 200, 20 S.W. 49; Roth v. Schroeter, Tex.Civ.App., 129 S.W. 203.

The above-cited authorities also, we think, support the converse of the proposition announced; that is, unless an

472

equitable right amounts to a title it is not available in a statutory action of trespass to try title.

In the case of Moore v. Snowball, supra, the plaintiff sued to set aside a tax sale on the ground of irregularities attending same. Defendant there pleaded in bar a formal judgment against the plaintiff in a suit by plaintiff to recover the same land on the ground the tax judgment on which the order of sale issued was void. In the former suit the defendant had filed a cross action against the plaintiff seeking to be quieted in her title. It was held, in answer to certified questions, that the former judgment, which was that the plaintiff take nothing and that defendant recover on her plea in reconvention the title and possession of the property, did not preclude plaintiff from seeking to regain the title to the property. In substance it is held that the equitable rights set up were not under the pleadings passed upon in the former suit. It was held that in the former suit that the only question presented was as to title and the right of possession, and was not the right of plaintiff to acquire title from the defendant.

The last paragraph of the opinion written for the court by that great jurist, Judge Williams, is as follows [98 Tex. 16, 81 S.W. 10, 66 L.R.A. 745, 107 Am.St.Rep. 596]: "It seems to be supposed that the case is affected by article 5275, Rev.St. 1895, which provides that a judgment in an action of trespass to try title 'shall be conclusive as to the title or right of possession established in such action.' There is no contention that the judgment is not conclusive as to the title and right of possession. The proposition here is that the title is held subject to any right of plaintiffs which was not and could not have been adjudicated within the scope of the action of trespass to try title in which it was rendered. Such a right is not a title judicable in that action. There is nothing new in the proposition that one party may have title and right of possession, and yet hold the property subject to equitable rights of another and duties of his own which may and must be enforced in proceedings other than actions involving only title and right of possession. Martin v. Robinson, 67 Tex. [368] 381, 3 S.W. 550. Such a right and corresponding duty are asserted by plaintiffs, and, as it was not determinable in the former

action, it was not cut off by the judgment therein."

This opinion has been cited many times since its rendition. Criticism of the principle announced does not appear in the decisions. The case has at times been distinguished, but, as far as we are able to find, never modified.

In the case of Manning et al. v. Green, supra, it was held judgment for title and possession of land was not conclusive of the rights of defendants as holders of a purchase money note reserving a lien on the land. In that case the vendor's lien was held to survive even though the defendants in the case had disclaimed as to title.

Another test, we think, that might be applied is, would the rights asserted here have been a defense if urged in cause 1233? Under plaintiffs' theory they did not have title or right to possession of the property. All they had was the right to acquire title. If the administrator's sale was not void the legal title was vested in defendant Moss. With this legal title went at least the right to retain same until he had received reimbursement in the amount expended in acquiring the judgments and for his compensation as agreed. Also there was vested in him the right to possession. Equity would not compel him to specifically carry out the duties, if any, owed to plaintiffs unless and until the duties owed to him had been discharged. We think it clear that if plaintiffs here had desired to assert the equities here alleged in cause No. 1233 it would have been necessary for them to have filed a cross action.

A true cross action or counterclaim is not the same action asserted by plaintiff on account of its very nature. 26 Tex.Jur. 137 § 419; Moore v. Snowball, supra; Ayres v. Duprey, 27 Tex. 593, 594, 604, 86 Am.Dec. 657; Shepard v. Cummings' Heirs, 44 Tex. 502; Angle v. Shinholt, 5 Cir., 90 F.2d 294; Rippetoe v. Dwyer, 49 Tex. 498; Haskins v. Wallet, 63 Tex. 213; Walet v. Haskins, 68 Tex. 418, 4 S.W. 596, 2 Am.St.Rep. 501; Hoodless v. Winter, 80 Tex. 638, 16 S.W. 427.

In our opinion the judgment in cause No. 1233 does not estop plaintiffs from asserting that they have an equitable right to acquire the title to the property involved herein from the defendants. The challenge to defendants was to assert any

title they might have. Moore v. Snowball, supra; Manning v. Green, supra; American Freehold Land & Mortgage Co. v. Macdonell, 93 Tex. 398, 55 S.W. 737; Central City Trust Co. v. Waco Bldg. Ass'n, 95 Tex. 48, 64 S.W. 998.

Before considering the action of the trial court in instructing a judgment in favor of defendant Wentz, we shall consider the assignments of the plaintiffs relative to the drawing of the jury and the ruling on the special exceptions.

In regard to the drawing of the jury we are inclined to the view that the law was substantially complied with and that the assignment presents no error. In view of the fact that we deem the assignments as to the ruling on the special exceptions present reversible error, and the matter as to the drawing of the jury will not recur on another trial, same will not be further discussed.

 Paragraph 27 of defendant Moss's first amended original answer is as follows: "This defendant states that plaintiffs have agreed to pay the attorneys who filed their petition in this suit one-half of any amount that might be recovered in this suit as they realize that they have no just claim against this defendant and are therefore willing to surrender one-half of any amount that may be recovered against defendants in this connection, and this defendant alleges said statements in evidence of the fact that plaintiffs do not consider that they have a bona fide claim against this defendant."

Plaintiffs in a supplemental petition in answer to paragraph 27 addressed the following exception: "Plaintiffs except to the allegations contained in paragraph 27 of the answer for the reason that same are immaterial, irrelevant, prejudicial, argumentative, and are not a proper matter of defense in this case."

On this exception the court made the following order: "That the special exception directed to paragraph 27 of defendant Moss's first amended answer should be sustained insofar as the following allegations of paragraph 27 are concerned: 'as they realize that they have no just claim against this defendant and are therefore willing to surrender one-half of any amount that may be recovered against defendants in this connection,' but that the general demurrer and all other special exceptions, including the special exception to

paragraph 27, other than as mentioned above, should be overruled. It is accordingly ordered, adjudged and decreed that the above quoted portion of paragraph 27 of defendant Paul Moss's first amended answer be and the same is hereby stricken."

Plaintiffs excepted to the ruling of the court as to paragraph 27. Defendant filed a second amended original answer omitting the allegations as to which exception had been sustained by the court.

The exception of plaintiffs challenged the facts as a legal defense. In effect it was a general demurrer to defendant's plea. In fact a pure issue of law was tendered. It cannot be logically maintained that paragraph 27 as contained in the pleading stated a defense to plaintiffs' cause of action or any part thereof. It placed before the jury as a defense a matter that was not a defense and did not tend in any way to establish any defense pleaded. Defendant evidently conceived that it was some advantage to him to have this matter before the jury with the approval of the court. Hence same was pleaded and proof adduced to sustain the allegations. The matter being a matter both of pleading and proof on the trial objections could not logically be made to the defendant's arguing the same. It was not misconduct on the part of the jury to consider and discuss the testimony, but their sworn duty to give same such weight as it was due. Under their oaths they were bound to do this. The very implication of the pleading was that plaintiffs, because they had agreed to pay their attorneys fifty per cent of the amount recovered, were not bona fide in the prosecution of their cause of action— the purpose of the suit was extortion and not for the vindication of legal rights. If plaintiffs were, by reason of a contract with their attorneys, extortioners, the inference was that they were likewise represented by extortioners. It appears by the bills of exceptions that counsel for the defendant argued this evidence at length before the jury.

It is asserted that before the jury was selected, but in the presence of the panel, one of the attorneys for the plaintiffs, in arguing the special exception, stated that they were to receive one-half of the amount recovered as a fee and to pay the expenses of litigation. We do not believe that that is sufficient to palliate the error in not sustaining the exception in its entirety. Even though the jury had that knowledge,

under their oaths they were bound not to consider same. But under the pleadings and the evidence it was their duty to consider same. Counsel for the defendant evidently conceived that the evidence had some bearing on the issues submitted, else they would not have argued it.

In our opinion plaintiffs had the legal right to the sustaining of the exception and it was error on the part of the trial court to fail to sustain same in its entirety. We cannot say that this error did not operate prejudicially to the plaintiffs. In fact we cannot conceive, in view of the issues here presented, the plea, the evidence received under its plea, and the argument on same, could have operated other than prejudicially to plaintiffs. Our duty to reverse and remand the judgment as between defendant Moss and plaintiffs is clear. Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822; Bain Peanut Co. v. Pinson, Tex.Com. App., 294 S.W. 536; American Produce Co. v. Gonzales, Tex.Com.App., 1 S.W.2d 602.

The purpose of the pleading, testimony and argument was not to enlarge or diminish a recovery but to defeat a recovery.

■ Much that has been said heretofore as to the case between defendant Moss and the plaintiffs applies as to defendant Wentz. The case should be reversed as to defendant Wentz likewise, unless he is a bona fide purchaser for value of the oil lease to which he asserts title, or unless by their acts plaintiffs are estopped to assert as against him the rights here asserted.

Defendant Wentz became interested in purchasing the five-eighths mineral interest in Section 28 vested in the Bates heirs subject to administration on or a short time prior to May 1, 1936. Lee Jones, an attorney of San Antonio, came to Odessa to investigate in regard to the purchase of a lease on this section. Henry Pegues, husband of Emily Pegues, at that time was administrator of the estate, but being unable to locate Pegues, Jones called upon Mrs. Emily Pegues in regard to purchasing the lease on the five-eighths interest. Mrs. Pegues informed him that she did not see how title could be made at that time. In the course of the conference Mrs. Pegues in substance informed Jones that she had employed defendant Moss as attorney to purchase the Crane County judgments for the Bates heirs, and that Moss had purchased them, but was then claiming to hold same for his individual benefit and claimed to be entitled to enforce them to their full extent. Jones informed Mrs. Pegues that if such were the case there was a cause of action in favor of the Bates heirs, and that the judgments were, in that case, held in trust for the Bates heirs.

Jones went to Crane County, and, upon investigation, ascertained that defendant Moss had purchased the Crane County judgments. He thereafter offered to represent the Bates heirs in the matter. This offer was not accepted. Mrs. Pegues informed Jones that she was negotiating with Moss for a settlement. Jones requested Mrs. Pegues to inform him if a settlement was reached. She had before this time told Jones she hoped to get out of the settlement the home place for Hattie Joe Bates and the place south of town for the minors. In compliance with her promise, she wrote Jones on May 19, 1936, that she had traded with defendant Moss. Thereafter in substance Mrs. Pegues informed Jones by long distance telephone that matters were satisfactory. Thereafter the sale by the administrator to Moss was consummated.

Prior to the consummation of the sale an abstract was submitted to the attorneys for defendant Wentz in which these probate proceedings were shown. The attorneys for defendant Wentz required a suit be instituted by Moss and upon the institution of cause 1233, but before the judgment was entered therein, defendant Wentz paid Moss in cash for the lease in question. The purchase price represented the fair market value of the property, or, in any event, was not so disproportionate as to raise the issue of good faith in the purchase.

It is conceded by all parties to this appeal that when defendant Wentz paid for the lease in October, 1936, the legal title was in Moss. It was placed there with the apparent concurrence of those who had the legal right, if anyone, to object thereto. Wentz had been put upon inquiry prior to the administrator's sale, and we think had pursued that inquiry with reasonable diligence. Before the administrator's sale he had been assured by the one representing the Bates heirs that the matters in dispute with Moss had been settled. The administrator's deed followed. At the administrator's sale the property purported to be sold for a small amount in excess of the value placed upon it in the inventory. If the Bates heirs had any objection to this sale the natural place to urge same was in

the Probate Court. Emily Pegues, acting for the Bates heirs, knew at all times that defendant Wentz was anxious to obtain title to this property; his agents had at all times displayed a friendly and sympathetic interest in the claim of the Bates heirs. She had assured them that she would keep them apprized of her negotiations with defendant Moss. She did this, and assured them that the matter was settled to her satisfaction. Defendant Wentz had every right to reasonably expect that if the matters in regard to the administrator's sale did not meet her acquiescence she would advise his agents with whom she was in communication. The good faith of defendant Wentz in all of these transactions is further attested by the fact that subsequent thereto in the development of the property he spent something over $300,000. This money was spent in reliance on the title acquired at the administrator's sale. It was spent largely before there was any notice of dissatisfaction on the part of the Bates heirs.

In our opinion the evidence establishes without dispute that defendant Wentz was a bona fide purchaser for value of the five-eighths mineral interest in Section 28. If such be the case, his title is immune from the attack made here. Teagarden v. R. B. Godley Lbr. Co., 105 Tex. 616, 154 S.W. 973; Meador Bros. v. Hines, Tex.Civ. App., 165 S.W. 915; Bailey v. Shell Petroleum Corp., Tex.Civ.App., 95 S.W.2d 982; Beasley v. Equitable Securities Co., Tex.Civ.App., 119 S.W.2d 200.

The case is affirmed as to defendant Wentz and reversed and remanded as to defendant Moss.

### On Motion for Rehearing.

In an able and forceful motion for rehearing appellee Moss urges that our decision in this case was based on a theory not tendered by appellants' pleading. In the original opinion we held in substance that appellants' suit was the assertion of an equitable right, rather than an equitable title to the land in question; further, that this equitable right to acquire title was unaffected by the judgment in cause No. 1233.

Appellee Moss bases his claim to title on, first, the administrator's sale; second, on the judgment in cause 1233.

The administrator's sale beyond any question vested the legal title in Moss —vested in him full title. It there remained so long as that deed was not set aside and annulled. According to the briefs of the parties this proposition seems to be conceded. In any event, it is well supported by authority. McCampbell v. Durst, 73 Tex. 410, 11 S.W. 380; McCampbell v. Durst, 15 Tex.Civ.App. 522, 40 S. W. 315; Id., 91 Tex. 147, 40 S.W. 955.

The authorities above cited, we think, likewise establish the proposition that a suit by the heirs to set aside an administrator's deed is not a suit for the land, although a prayer is made for the recovery of the land.

The administrator at the sale sold the title of appellants to the land in question. Their title was the title of their ancestor at the time of his death. If, prior to the purchase, Moss had agreed to hold the property in trust for appellants and purchased with this understanding, this would have invested appellants with an equitable title as distinguished from an equitable right. Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75.

However, the evidence does not establish an agreement on the part of Moss to hold the Curry Ranch in trust for appellants. If he is to be held to hold that title in trust for appellants, it is by virtue of a constructive trust. Appellants must set aside the deed to entitle them to relief. It is not a link in appellants' chain of title—its effect was to break their chain. Conceded that the deed is voidable, until set aside it operates as a valid and perfect deed. Moss purchased not for the Bates heirs, but from the Bates heirs.

In the case of McCampbell v. Durst, supra, it is held that the right of the heirs or devisees to set aside the administrator's deed was an equitable right, as distinguished from an equitable title. The case last cited also illustrates the difference between an action to recover the title of land and an action to set aside an instrument conveying the title to the land. The actions are so different that different statutes of limitation apply thereto. The case of Bell County v. Felts, Tex. Civ.App., 120 S.W. 1065, very clearly draws the distinction as to when a suit is for recovery of land and when an equitable right is sought to be vindicated and a recovery of the land is prayed as a consequence of the vindication of that right.

The determination of the character of the cause of action or causes asserted by appellants is important, not only

on the effect of the judgment in cause No. 1233, but likewise on the question of the title independent of that judgment.

In none of the four counts constituting appellants' trial petition is there a specific prayer for the setting aside of the administrator's deed. General relief, legal and equitable, under the facts stated is prayed for in each of the four counts. It is very clear from the authorities above cited appellants were not entitled to recover on the first count in trespass to try title. The administrator's deed as well as the judgment was each an insuperable barrier. McCampbell v. Durst, supra.

In substance paragraphs two to nine of the trial petition trace the history of the Bates estate from the death of W. F. Bates until about March 1, 1936. A contract with appellee Moss is then averred to the general effect that he was to represent appellants in seeking to adjust the indebtedness against the Bates estate; purchase of the Crane County judgments by Moss for $12,000; that Moss secured part of the money from F. A. Henderson, a co-surety with the Bates estate in the judgment; further, that the fact that Henderson furnished approximately $7,800 of this money was unknown to appellants at relevant times; the concealing of the amount paid and the representation that it would cost $18,000 to settle the judgments; the purported contract of May, 1936, is then alleged; the representation by Moss that he had used his own money in the purchase of the judgments, and that he had a right to enforce same for their face value, and that he had a right to enforce the $12,000 assessment on the Bates stock. In brief, it sets up fraudulent representations on the part of Moss to obtain the contract of May 16th, and to secure the acquiescence of the appellants in the purchase by appellee Moss at the administrator's sale. It in substance alleges the purchase by appellee Moss at the administrator's sale and the payment of his bid by a credit on an apparent indebtedness greatly in excess of the actual indebtedness of the estate. The petition is very long, and perhaps this summary is somewhat inadequate. Suffice it to say, further, that in numerous places, in three of the counts at least, it is averred as a conclusion, we think, that the appellants had the equitable title to the property. However, we are inclined to the belief that it charges

the administrator's deed was obtained by fraud, and in this respect states facts which, if true, justify a cancellation of that deed.

We hold the pleading of appellants was sufficient to present the issue of cancellation. Hagelstein v. Blaschke, Tex.Civ. App., 149 S.W. 718; Wright v. Chandler, Tex.Civ.App., 173 S.W. 1173; 33 Tex.Jur. pp. 468-470, pars. 47 and 49; 12 C.J.S., Cancellation of Instruments, p. 1047, § 61.

Cancellation would be consistent with the facts alleged in the petition.

We will again consider briefly the judgment in cause No. 1233. It of necessity adjudicated that the administrator's deed was a valid, effective instrument. This it certainly was and is until cancelled. In the trespass to try title action it was not, and, under the pleadings there, could not have been assailed.

In the motion for rehearing of appellee we are asked to state what interest the Bates heirs now have different from that held by them on December 10, 1936, the date of the judgment. In our opinion, none. But our view is that the real question is as to the effect of the judgment on the alleged rights of the Bates heirs. Before the judgment the title of the Bates heirs was by a valid administrator's deed vested in appellee Moss, where it remained and remains until that deed is cancelled. Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025; Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745, 107 Am.St.Rep. 596.

It is asserted that the judgment is tantamount to a conveyance by the Bates heirs. This may be correct in a sense. However, their legal title was conveyed by the administrator's deed. To this end the judgments of the Probate Court under which this sale was made and by which it was confirmed, were equally efficacious to accomplish this as the judgment in cause 1233. Each court had jurisdiction in the premises.

In Moore v. Snowball, supra, the plaintiff had the right asserted in the second suit at the time he prosecuted his first suit in trespass to try title; and such was the situation in the case of Manning v. Green, 56 Tex.Civ.App. 579, 121 S.W. 721. It is not contended that the original suit in Moore v. Snowball was not a suit to recover the land. We think Judge Wil-

liams, in the opinion, makes it clear that such was its object.

A suit to set aside a deed alleged to be voidable is not a trespass to try title suit. If this be true, it is a separate and distinct cause of action from trespass to try title. Conceding the validity of the above assertion therefrom may be deduced that the subject matter of each action is distinct and different from the other. As before stated, as illustrating the entire dissimilarity between the two actions, one statute of limitation is applicable to a suit for title, and another statute to a suit to cancel a deed. Stafford v. Stafford, supra.

The case of Fiveash v. Willis, Tex.Com. App., 1 S.W.2d 585, is cited as being in conflict with our holding, and as limiting the principles announced in Moore v. Snowball, supra—it would be more exact, perhaps, to say as to our misapplication of the principles announced in Moore v. Snowball. In the former case the party held precluded by the judgment had a vested title which became effective in possession on the expiration of the preceding life estate. The petition claimed a fee simple title in the plaintiff. Under Art. 4791, R.S.1879, now Art. 7371, R.S.1925, the joinder of the party held precluded by the judgment seems to have been authorized. He held a vested estate in the property which would, had it been urged, perhaps have defeated in part the suit as to the estate claimed by plaintiff.

There is likewise cited the case of Woods v. Gulf Production Co., Tex.Civ. App., 100 S.W.2d 412. There was involved in that case the question of the existence of a valid judgment. The discussion of the effect thereof is merely incidental. It was against the title of defendant that the decree was held to operate, and not against a mere equity as distinguished from an equitable right.

It is conceded that had appellee Moss expressly agreed to take and hold the title to the Curry Ranch in trust for the Bates heirs another question would be presented. The proof is to the contrary. Moss expressly testified that this was not the case. It is not pointed out where Emily Pegues testified to the contrary.

It is ordered that the motion for rehearing of appellee Moss be overruled.

Appellants' motion for a rehearing as to appellee Wentz has been considered and it is ordered that same be overruled.