## LANFORD v. PARSONS.
### No. 9908.

Court of Civil Appeals of Texas. Austin.

Jan. 17, 1951.

Rehearing Denied Feb. 7, 1951.

Hart, Brown & Sparks, Jack Sparks, Austin, for appellant.

White, Taylor & Chandler, Q. C. Taylor, H. Grady Chandler and Kerns B. Taylor, all of Austin, for appellee.

GRAY, Justice.

This appeal is from a judgment denying appellant any recovery in his suit on a promissory note, dated November 1, 1948, due January 5, 1949, executed by appellee and payable to appellant, or order.

426

Appellee's answer was that the note sued on was without consideration; failure of consideration; that a part of the consideration for the note was the transfer of six shares of stock in Equipment Sales Company, a corporation, and that as a part of the consideration for the note sued on, and simultaneously with its execution, the parties entered into the following written contract:

"The State of Texas,
"County of Travis.

"Whereas, Don L. Lanford and H. R. Lanford have sold to S. B. Parson, and Betty L. Parsons all of their stock in Equipment Sales Company, a Texas corporation, and a part of the consideration for such sale was the agreement hereinafter set out:

"Now, Therefore, Know All Men By These Presents: That this instrument is executed for the purpose of evidencing the agreement of Don L. Lanford and H. R. Lanford with S. B. Parsons, Betty L. Parson, and Equipment Sales Company, and each of them, that neither Don L. Lanford nor H. R. Lanford will, either directly or indirectly, for a period of ten years from the date hereof, represent any persons, firms, or corporations on sales of equipment to the State of Texas, or any of its boards, departments, bureaus, or schools, that the Equipment Sales Company now represents in such sales, or that the said Don L. Lanford, H. R. Lanford, and S. B. Parson, have discussed representing in any such sales.

"Witness our hands in duplicate this the 1st day of November, 1948."

Appellee further alleged a breach of the contract, and by trial amendment (filed on the day of trial and made a part of the answer) tendered the six shares of stock in the corporation to appellant.

Appellee also filed a cross-action for damages for breach of the above contract.

Upon a non-jury trial the court denied appellant any recovery on the note, rescinded the contract, vested title to the six shares of stock in appellant, and denied appellee recovery on his cross-action.

The trial court filed findings of fact and conclusions of law and, among other findings, found that the contract was a material part of the consideration for the purchase and sale of the six shares of stock; that the contract was violated by appellant both before and after January 5, 1949, and that the parties could be placed in status quo by the cancellation of the note and the contract and the return of the six shares of stock to appellant, which were of the same value as on November 1, 1948, except in so far as their value had decreased because of the conduct of appellant.

The trial court concluded that the consideration for the note failed; that there was such a substantial and material breach of the contract by appellant that appellee is entitled to rescission, and, that in order to do justice between the parties, the contract should be rescinded, the shares of stock returned to appellant and the parties placed in status quo. The court also concluded the contract is non-severable.

The record before us shows that appellee, appellant and Don Lanford (appellant's brother) incorporated Equipment Sales Company for the purpose of representing manufacturers of equipment in sales of equipment to the State and its different agencies, and that, for some time prior to the execution of the note and contract in question, they had worked together for the benefit of the corporation. Prior to November 1, 1948, appellee, appellant and Don Lanford orally agreed that appellee would purchase the stock of appellant and Don Lanford in the corporation; that appellant and Don Lanford would not compete in the business of the corporation as such business was evidenced by existing contracts with manufacturers and other firms then discussed by them. They then agreed upon attorneys to reduce the agreement to writing. Don Lanford went by the attorney's office, approved the draft of the agreement, so notified appellee and appellee then mailed him a check for $1,000 in payment for his stock. Afterwards, on November 1, 1948, appellant and Don Lanford brought the note and

contract to appellee, at which time the note was signed and handed to appellant, who took the note and then told appellee, "* * * we decided we can't sign that agreement." Thereupon, appellee demanded the return to him of the note and $1,000, and said they would go on with the business as they had in the past. The contract was then signed.

This evidence was sufficient to show that by the action of the parties, which is evidence of their intention, they made the purchase of the stock and the giving of the note by appellee dependent on the contract, and that the covenants thereof must be held to have gone to the consideration of the entire transaction, there being no allotment of such consideration to the purchase of stock and the making of the contract. It shows appellee would not have purchased the stock without the signed contract and that he relied on appellant to carry out the obligations imposed on him thereby.

Appellant's original petition was filed February 3, 1949. After November 1, 1948, appellee was sick, at least during a portion of the time, from that date until January 4, 1949. In December 1948, while appellee was in a hospital, he told appellant he had heard rumors, " * * * that you boys are not being fair in this matter." Afterwards, he made an investigation of the conduct of appellant relative to the contract, and on January 4, 1949, wrote appellant a letter wherein he advised appellant that he had learned appellant had broken his contract; stated that he wanted to pay the $1,500 note but that he wanted appellant to abide by the contract. This letter was mailed to appellant at his Austin address and had appellee's return address on it. Appellant said he did not receive the letter, and appellee said it did not come back to him. On January 6, 1949, appellant wrote appellee that he would expect payment of the note by January 8th or that he would have to do "something about this debt that has been due since last August."

After November 1, 1948, appellant and his brother Don engaged in business similar to that of Equipment Sales Company. Appellant testified that he considered that appellee repudiated his contract on January 5, 1949, when he failed to pay his note, and that "We abided by this instrument (contract) until he failed to pay the note." Sometime in the spring of 1949, appellant made a sale of equipment admittedly representing one of the firms discussed prior to making the contract. Referring to his letter of January 6, 1949, supra, appellant said he considered that appellee repudiated his contract on January 5th; that he could not get an answer from him, and explained his intent in writing the letter by saying, "I at least expected a letter or an answer or something, or some reason for not paying me." And that after January 5th he felt justified in doing what he had contracted not to do.

This evidence was admissible under appellee's pleadings. Appellee's amended answer (on which the trial was had) was filed February 20, 1950, and there appellee alleged: "Defendant further alleges that notwithstanding the agreement entered into by and between H. R. Lanford and defendant, that H. R. Lanford and Don L. Lanford wholly breached said contract and agreement with him in that they and each of them directly represented persons, firms and corporations on sales of equipment to the State of Texas, and the Board of Control."

As interpreted by appellant, appellee's failure to pay the note when it became due was a breach of the contract and operated to discharge appellant from its performance. Appellant thus recognized the existence of some relation between the note and the contract to the extent, at least, that the binding effect of the contract depended on the payment of the note. At any rate, appellant was not at liberty to repudiate the contract as to himself and enforce it (the note) as to appellee, because if appellant elected to repudiate the contract and not perform it because of appellee's default he thereby released appellee from performance. Haddaway v. Smith, Tex.Civ.App., 277 S.W. 728.

It is the general rule that " * * * a party to an indivisible contract cannot enforce it or recover damages for its breach

unless he shows that he has performed the obligations imposed upon him, or that he offered to perform them and was able to do so, or unless he shows some valid excuse for failure to perform." Acme Pest Control Co. v. Youngman, Tex.Civ. App., 216 S.W.2d 259, 263. Appellee having purchased the stock of appellant in the corporation, and, also, freedom from competition in the business (to the extent stated in the contract) was entitled to the benefits of the business of the corporation unhampered by the competition of appellant to that stated extent. There having been shown and found by the trial court a breach of the contract by appellant in a material respect, rescission was authorized. Hausler v. Harding-Gill Co., Tex.Com.App., 15 S.W.2d 548. From what has already been said, it is clearly demonstrated that the purpose and object of the contract was to enhance the value of the stock purchased along with the business of the corporation, and that a breach of the contract defeated the object and purpose of the purchase, and that, in view of the ten-year period provided in the contract, rescission was proper. 7 Tex.Jur., p. 935, Sec. 32, there having arisen no equities to prevent it. El Paso & S. W. R. Co. v. Eichel & Weikel, Tex.Civ. App., 130 S.W. 922, 940, Er.Ref.; 17 C.J. S., Contracts, § 452, p. 932.

The trial court found that the parties could be placed in status quo by rescinding the note and contract, reinvesting the stock in the corporation in appellant, and that the value of such stock was the same as on November 1, 1948, except in so far as its value had decreased because of the conduct of appellant. Thus the decree restored to appellant the benefits, if any, of his original investment, such benefits being decreased only because of appellant's own conduct.

The oral evidence heard by the trial court explained the consideration for the contract and note, failure of such consideration, that the contract was breached and the negotiations leading up to the making of the contract. 10 Tex.Jur., p. 528, Sec. 306. And in fact such evidence was consistent with the terms of the written contract. 17 Tex.Jur., p. 802, Sec. 358. The evidence was admissible under the pleadings and did not violate the statute of frauds. Neither were the promises of the parties within the statute. Holland v. W. C. Belcher Land & Mortgage Co., Tex.Civ.App., 248 S.W. 803, Er.Dis.

There was no pleading of laches, no request for a finding thereon was filed, and no finding was made. In this state of the record we can not consider issues upon which no findings were made by the trial court. 3-B Tex.Jur., pp. 278–279, Sec. 873.

Appellee's letter above referred to shows that the concessions, if any, made by appellee were in recognition of the rights secured to him by the contract, and his action in writing the letter can not be held to be a waiver of his right to rescind. 10 Tex.Jur., p. 388, Sec. 220. Neither does appellee's pleadings show that he so ratified the contract that it was error for the trial court to decree a rescission. After pleading the facts already stated in his answer, appellee prayed for "such other and further relief, special and general, in law or equity, to which he may be entitled." Appellant filed no exceptions to the pleadings but he did file exceptions to the trial court's conclusion as to rescission. Generally, it is for the court to grant such relief as is appropriate under the pleadings and the evidence. 33 Tex.Jur., p. 468, Sec. 47. Under the pleadings here and the facts found by the trial court a decree of rescission was authorized under the prayer for general and special relief. Pegues v. Moss, Tex.Civ.App., 140 S.W.2d 461, on motion for rehearing, 140 S.W.2d 475, at page 476, Er.Dis. by agreement; 7 Tex. Jur., p. 978, Sec. 47; 8 Tex.Jur.Sup., p. 90.

The fact that appellee filed a cross-action for damages along with his answer does not change the conclusions already announced. Rules 84 and 85, Texas Rules of Civil Procedure.

Don Lanford, who signed the contract, testified at the trial but was not made a party to the action. He had been paid for his stock in the corporation and the relief granted in no wise operated adversely to his interest, and did not affect any of his rights, for which reason such rights as he

had in the contract were separable from the rights of appellant and appellee, and he was not a necessary party to the action. 9 Am.Jur., p. 396, Sec. 55. Whether the judgment bound or released Don Lanford in no way limited or enlarged the right of appellant to enforce payment of the note, or the right of appellee to defend against its payment because of the alleged acts of appellant which caused the consideration to fail. No complaint was made of his absence in the trial court, and, because he is not shown by the record to be a necessary party, complaint of his absence can not be made for the first time here. 32 Tex.Jur., p. 126, Sec. 87; 3-A Tex.Jur., p. 183, Sec. 145; Rule 93, T.R.C.P.

Since appellant's suit was for recovery of the full amount due on the note, a complaint first made here that appellee did not earlier make tender of the six shares of stock can not be said to be fatal to appellee's right of rescission. 7 Tex.Jur., p. 968, Sec. 51; 40 Tex.Jur., p. 840, Sec. 3.

Appellee was not required to sue for damages for breach of the contract. Though the sale admitted by appellant made a profit of $350, yet the profits from future sales as well as damages resulting from competition of appellant in the business of the corporation over the contract period of ten years render appellee's damages incapable of reasonable estimate. Logan v. Elliott, Tex.Civ.App., 61 S.W.2d 157, Er.Dis.

The above opinion, not meeting the approval of my brethren, is herewith respectfully filed as my dissent. In my opinion reversible error is not presented and the judgment of the trial court should be affirmed.

HUGHES, Justice.

In our opinion the remedy of rescission, under the facts of this case, is too harsh.

Sometime in June 1948, Don and H. R. Lanford purchased certain interests in the Equipment Sales Company from S. B. Parsons. Don Lanford paid Parsons $1,000 for the interest received by him and H. R. Lanford paid Parsons $1,500 for the interest received by him. This Sales Company was incorporated but the date of such incorporation is not shown. The three persons above named and Betty L. Parsons were the only stockholders.

The business of this corporation was to represent various concerns in the sale of equipment and other merchandise to buyers, the principal buyer being the State and its numerous agencies. Income of the corporation was to be derived from fees or commissions earned in making sales.

The corporation did not flourish. In fact it never made a cent.

Neither Don nor H. R. Lanford was paid any salary or expenses by the corporation.

This was the state of affairs when on about August 15, 1948, Parsons agreed to repurchase the interests of the company which he had sold to Don and H. R. Lanford for the price which they had paid. Accordingly, Don Lanford was repaid $1,000.

For various reasons, some advanced by the Lanfords and others by Mr. Parsons, all immaterial, the repurchase agreement was not completed until November 1, 1948, when the note sued on and the agreement not to compete were executed.

We note here that appellee Parsons alleged in his answer that this agreement not to compete was "void and against public policy," yet by a cross-action he sought damages in the sum of $10,000 for its alleged breach by appellant, H. R. Lanford.

The trial court found that appellant violated such agreement by representing the Massey-Harris Company both before and after January 5, 1949.

The only evidence in the record of a sale made by appellant to the State of Texas or to any of its agencies in behalf of the Massey-Harris Company was a sale made May 5, 1949, for which sale appellant received a fee or commission of $350.

It will be noted that this sale was made several months after appellee's note had matured and after this suit had been instituted.

The equitable remedy of cancellation is harsh and little favored by the courts and will not be granted if a legal remedy is adequate. 7 Tex.Jur., p. 886.

The legal remedy here, an action for damages, is simple and adequate. Public records will disclose every breach of this contract made by appellant and no difficulty should be encountered in proving the damages.

Chief Justice ARCHER concurs in the views herein expressed.

In order that our opinion may be complete we adopt all fact findings contained in the dissenting opinion of Associate Justice GRAY not inconsistent with fact findings made in this opinion.

It is therefore ordered that the judgment of the trial court be reversed and the cause remanded with instructions to render judgment for appellant on the note sued on, less such damages as appellee may show to have been sustained by reason of appellant's breach of the agreement not to compete.

Reversed and remanded with instructions.

GRAY, J., dissents.

On Appellee's Motion for Rehearing.

HUGHES, Justice.

Appellee cites many authorities holding that equitable relief of *some character* may be granted to enforce agreements not to carry on a trade and not to compete. The relief granted in most of the authorities cited was injunctive or by way of specific performance.

We did not hold in our original opinion that all equitable relief was inappropriate. Rescission only was involved and this alone was denied.

We do not consider the trial court's finding that the parties could be placed in status quo by rescission to be of any great importance. This finding could be made in many breach of contract cases but it does not follow that rescission should necessarily be granted. A finding that parties could not be placed in status quo by rescission would weigh against rescission but a contrary finding is, of itself, no basis for rescission. Contracts are made to be enforced, not rescinded.

The motion is overruled.

Overruled.

GRAY, Justice (dissenting).

I agree that the finding of the trial court that the parties could be placed in status quo is not of controlling importance. The finding is a reason why rescission is not inequitable rather than a reason for rescission.

I remain of the opinion as expressed in my dissent.