Melvin A. ATKINS, Appellant,

v.

Helen A. BEASLEY, Appellee.

No. 5635.

Court of Civil Appeals of Texas, Waco.

Nov. 24, 1976.

Daniel R. Rutherford, San Antonio, for appellant.

O. T. Moore, Jr., Blundell & Moore, Lockhart, for appellee.

## OPINION

JAMES, Justice.

This is a suit for rescission of a written contract, and for special damages incident thereto. After trial by jury the trial court instructed a verdict for the Defendant, from which Plaintiff appeals. We reverse and remand.

Plaintiff-Appellant Melvin K. Atkins entered into a written contract with Defendant-Appellee Mrs. Helen A. Beasley and one Ben C. Stanford (since deceased), wherein Atkins agreed to put up $11,000.00, and Stanford and Beasley agreed to work over two existing oil wells and try to get commercial production from said Wells. The contract obligated Stanford and Beasley to drill out the Hensel No. 1 well down to the Austin Chalk Formation at about 2143 feet. If oil was not produced in commercial quantities at that depth, then they were obligated to attempt production at the Pecan Gap Formation at approximately 1900 feet. Failing production in paying quantities at that depth, they were then to attempt production in the Lower Navarro Formation at about 1700 feet. Failing Commercial production at that depth, they were to attempt production in the Upper Navarro Formation at about 1400 feet. Failing Commercial production in that formation, they then were to attempt production in the La Vernina Formation at about 800 feet. In the event they failed to get production at said last-named depth, Stanford and Beasley were obligated to duplicate the above-described efforts in the Hensel No. 2 well.

Said contract was dated July 22, 1967, and Stanford and Beasley agreed therein to commence workover operations and drilling no later than July 24, 1967. Atkins paid the $11,000.00 to Stanford and Beasley at the outset in accordance with the agreement. The contract further provided that Stanford and Beasley guaranteed Atkins the return of his $11,000.00 by way of payment from oil runs to Atkins from the Goss Lease (which Stanford and Beasley owned and was not a part of the leases which included Hensel Nos. 1 and 2 wells). In this manner it was provided that Atkins would recoup his $11,000.00 irrespective of whether Hensel No. 1 or Hensel No. 2 produced or not.

Pursuant to the contract, Stanford and Beasley moved equipment on location at Hensel No. 1, drilled the hole out, and attempted to produce oil in the Austin Chalk

Formation. Oil was not produced in paying quantities at that depth and soon all efforts to produce oil at this or any other depth were soon abandoned. Finally in August or September 1967, all efforts at production stopped, and by the end of November or first part of December 1967, the Hensel No. 1 well had been completely abandoned. No attempt was made to work over Hensel No. 2.

When Atkins inquired of Stanford and Beasley as to why they failed to perform in accordance with the contract, they told him they had run out of money. At this point there is a conflict in the evidence as to what happened. Plaintiff testified that he was told that Hensel No. 1 needed to be acidized to make it a producing well; that since Stanford and Beasley were out of money they could not afford to acidize the well; that the parties agreed that Stanford and Beasley would assign to Atkins certain additional oil and gas leases and in return Atkins would advance additional money to have the well acidized. The leases were assigned and the well was acidized at the expense of Atkins; however, as stated Stanford and Beasley never attempted production in Hensel No. 1 in any formation except the Austin Chalk Formation and thereafter abandoned any further efforts at production. Stanford died and Atkins brought this suit against Mrs. Beasley.

Defendant disputed Plaintiff's version as to what happened after the attempt to produce in the Austin Chalk Formation and contended that Plaintiff Atkins thereafter took over the reworking operations from Stanford and Beasley and thereby interfered with their performance of the contract. Atkins was never paid any money from the Goss Lease, the reason given by Defendant Beasley being that "he never asked for it."

At the conclusion of the evidence and after both sides rested, the Defendant-Appellee moved for instructed verdict asserting there was no evidence as to the amount of damages sustained by Plaintiff. The trial court granted Defendant's motion for instructed verdict and entered judgment that Plaintiff Atkins take nothing against Defendant Beasley. Defendant contends that Plaintiff's cause of action as pleaded is one for damages at law for breach of contract as opposed to a suit for rescission of the contract, an equitable remedy.

We are of the opinion that Plaintiff's pleadings may be fairly interpreted as a suit for rescission of the contract, including a prayer for return of his $11,000.00 and recovery of special damages in the amount of $1653.11. The evidence showed without dispute that Atkins paid the $11,000.00 to Stanford and Beasley, at or about the time the contract was executed, and after efforts to get commercial production on Hensel No. 1 had been abandoned, that Atkins thereafter spent additional sums on the well in the total amount of $1653.11, and that he never was repaid any money.

■ Rescission is an equitable remedy. Complete and full justice is a fundamental doctrine of equity jurisprudence, and if damages as well as rescission are essential to accomplish full justice, they will both be allowed. *Wintz v. Morrison* (Tex.1856) 17 Tex. 372; *Hunt Co. Oil Co. v. Scott* (CA 1902) 28 Tex.Civ.App. 213, 67 S.W. 451, writ refused; *Holland v. Western Bank and Trust Co.* (CA 1909) 56 Tex.Civ.App. 324, 118 S.W. 218; *Dews v. Floyd* (Tyler Tex. Civ.App.1967) 413 S.W.2d 800, 806, no writ. Also see *Southwestern Cooperage Co. v. Kivlen* (Dallas Tex.Civ.App.1924) 266 S.W. 826, no writ.

■ If an executory contract is breached in a material respect, as where one party fails or refuses to perform, the other party is ordinarily entitled to rescind the agreement, except of course where such relief would be inequitable; and where breach of contract is deemed to be a sufficient ground for rescission, a total breach is not required, but on the contrary a partial breach will be sufficient if it affects a material part of the agreement, or if it clearly evidences an intention by the party in default to abandon the agreement. *Hausler v. Harding-Gill Co.* (Tex.Comm.App.1929) 15 S.W.2d 548, opinion approved; 13 Tex.Jur.2d "Contracts", par. 333, pp. 602, 603.

508

In the case at bar, we are of the opinion and hold that Plaintiff-Appellant Atkins pleaded for rescission of the contract and for damages incident thereto; that no exceptions were levelled at the sufficiency of such pleadings by the Defendant-Appellee, and the disputed fact issues should have been submitted to the jury. Therefore, the trial court erred in granting Defendant-Appellee's motion for instructed verdict.

For the reasons, we reverse and remand the cause for trial on the merits.

REVERSED AND REMANDED.