**William B. ENNIS, Appellant,**

v.

**INTERSTATE DISTRIBUTORS, INC., Appellee.**

**No. 20122.**

Court of Civil Appeals of Texas, Dallas.

April 1, 1980.

Rehearing Denied April 29, 1980.

James K. Peden, III, Strasburger & Price, Dallas, Terry B. Arnn, Arlington, for appellant.

John M. Skrhak, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

Before GUITTARD, C. J., and ROBERTSON and STOREY, JJ.

STOREY, Justice.

This appeal is from a judgment granting rescission of a covenant which restricted competition by William B. Ennis with his former employer, Interstate Distributors, Inc. and ordered restitution to Interstate of the consideration paid by it for the restrictive covenant. Ennis was formerly the president of Interstate and owned one-third of its outstanding shares. The judgment is based upon jury findings that after he terminated his employment and sold his stock to Interstate, Ennis materially breached the restrictive covenant by soliciting sales from its customers and otherwise competing with it. Ennis contends that the remedy of rescission was not appropriate because, due to his partial performance, the contract was not wholly executory and the status quo could not be restored. We conclude under the facts of this case that the nature of appellant's breach was such that a return to the status quo was not required as a condition to granting rescission. We therefore hold that rescission was a proper remedy and affirm.

Rescission and restitution were ordered by the trial court because of the material breach of a covenant not to compete. The covenant was a part of a purchase agreement whereby appellant Ennis sold, and appellee Interstate acquired, his one-third of the outstanding shares of Interstate, a corporation engaged in the sale and distri-

bution of ice machines and related products.[1] The agreement provided that Ennis would not for a period of three years following his termination, compete with Interstate in the states of Louisiana, Texas, New Mexico, and Mississippi. Specifically, he was prohibited from engaging in the wholesale distribution of commercial refrigeration or ice-making machines or any other products or lines sold, delivered, distributed, or serviced by Interstate in the restricted area, particularly, any equipment manufactured by the Frigidaire division of General Motors Corporation. He was further prohibited from divulging to any competitor information concerning customer names, methods of distribution, sales, services, practices and the like. Finally, Ennis covenanted not to call on, or solicit sales from, any customers or potential customers of Interstate for ice-making machines, parts, or service in any of the geographical areas serviced by Interstate.

The primary purpose of the covenant was to protect Interstate's interest in its Frigidaire account for which it held an exclusive distributorship in all of the restricted area except South Texas and the Texas Panhandle. However, Interstate had other product lines for which it acted as distributor or manufacturer's representative within the entire restricted area. The covenant was initially formulated in August 1973, as a part of Ennis' contract of employment. It was subsequently adopted and by reference made a part of the purchase contract on August 31, 1975. While the term of the covenant was for three years commencing August 31, 1975, and ending August 31, 1978, its practical effect was a term of two and one-half years ending August 31, 1978, because Ennis did not finally terminate his employment with Interstate until February 1976.

The record reflects that before his termination, but after signing the purchase con-

tract, Ennis solicited the representation of Sani-Serv, one of Interstate's manufacturers, for his individual account. He commenced to represent this account actively in December 1976. In February 1976, upon his termination from Interstate, Ennis accepted employment with LaBeaume and Company, a manufacturer's representative engaged in the sale of Frigidaire equipment as well as other lines of related equipment which were in direct competition with those represented by Interstate. This employment continued until July 1976. During the period from August 1976 until December 1976, Ennis was engaged in an unrelated business or was unemployed. Commencing in December 1976, he became a representative of Sani-Serv and, in February 1977, became a sales agent for Savoy Industries, a manufacturer of product lines which competed with Interstate. This employment continued until June 1977 when Ennis became associated with American Ice Machines, a wholesale distributor of equipment which competed with the Frigidaire product distributed by Interstate. This employment continued beyond the term of the covenant, August 31, 1978, and through the date of trial, February 1979. The documentary evidence, as well as his own testimony, confirm that Ennis called upon and made sales to Interstate's customers, solicited business with its manufacturers and distributors, and engaged in other acts which the jury could reasonably infer were in violation of his duty not to disclose the confidential information prohibited by the covenant.

Thus it appears that for only about three months of the term of the covenant could it be said that Ennis was not engaged in employment in violation of it; and then only if it is assumed that his period of unemployment was in performance of the covenant rather than for other reasons. This evidence supports the jury finding of a material breach. We conclude that the

---

1. The purchase agreement was severable. It allocated the payment of $50,000 as follows: $10,000 for Ennis' stock, $8,736.80 for a pre-existing debt, $10,400 for commissions due and $19,989.52 for the restrictive covenant. Additionally, Interstate agreed to indemnify Ennis from any of its debts and obligations for which he might be individually liable.

breach, or more precisely stated, the failure to perform the obligations of the covenant, was of such a nature as to warrant its rescission and require restitution of the consideration paid.

■ Rescission is authorized if there is a breach of a contract in a material part. The breach need not be total but a partial breach may be sufficient if it goes to the essence of the contract. Ordinarily, however, rescission will be denied when full relief at law can be provided. *Cheek v. Metzer*, 116 Tex. 356, 291 S.W. 860 (1927); *Hausler v. Harding-Gill Co.*, 15 S.W.2d 548 (Tex.Com.App.1929, judgmt. adopted); *Lanford v. Parsons*, 237 S.W.2d 425 (Tex. Civ.App.—Austin 1951, writ ref'd n.r.e.). While there is authority for the proposition that rescission may not be granted unless in so doing the parties may be restored to the status quo which existed prior to the breach, restoration is not indispensable. Rather, inability to return the parties to their former position is an element to be considered in determining whether, under a particular state of facts, rescission would be inequitable. *See Hausler v. Harding-Gill Co.*, 15 S.W.2d 548, 549 (Tex.Com.App.1929, judgmt. adopted). As pointed out in 12 S. Williston on Contracts § 1457 at 40–42 (3rd ed. 1970), the right to restitution rests upon equitable grounds such as a failure of consideration:

> If a party to a contract has paid money and the other party has wholly failed to perform on his part, restitution may be had and this is the general rule: "After all, the underlying principle, running through the cases is this and nothing more, that the action for money had and received upon a failure of consideration, partial or complete, is to be ruled by broad considerations of equity and justice, and that the plaintiff may not prevail if he fails to satisfy the court that what the defendant has received should in conscience be returned." [Citations omitted.]

In urging that his part performance under the contract rendered the remedy of rescission inequitable, Ennis relies on *McDaniel v. Pettigrew*, 536 S.W.2d 611 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.) and *Freyer v. Michels*, 360 S.W.2d 559 (Tex.Civ.App.—Dallas 1962, writ dism'd). Each of these cases is distinguishable. In *McDaniel*, plaintiffs sought rescission of a contract to build a house after defendants had completed construction. The court held that defendants, in completing the house, had tendered such performance as to render rescission inequitable. In this case, no such part performance had occurred. In *Freyer*, the court refused to allow a lessee to rescind a lease of premises that he had occupied for two-thirds of the lease term. 360 S.W.2d at 562. On the other hand, our courts have treated contracts as executory in cases where one party has performed under the contract but not to such extent as would render the remedy of rescission inequitable. *Atkins v. Beasley*, 544 S.W.2d 505 (Tex.Civ.App.—Waco 1976, no writ); *Investors Utility Corp. v. Challacombe*, 39 S.W.2d 175 (Tex.Civ.App.—Waco 1931, no writ).

■ Appellant relies on *Lanford v. Parsons*, 237 S.W.2d 425 (Tex.Civ.App.—Austin 1951, writ ref'd n.r.e.), for the principle that the remedy of rescission is too harsh in cases concerning covenants not to compete. In that case the defendants sold the plaintiffs their stock in a company engaged in making equipment sales to the state, and the plaintiff executed a promissory note for the purchase price. Defendants agreed not to compete with plaintiff for a period of ten years. The contract was indivisible. Upon discovering that defendants had breached the covenant, plaintiff refused to make further note payments and sued to rescind the contract. In reversing the trial court's judgment granting rescission, the court of civil appeals stated that the remedy of rescission was too harsh, because the record showed only one sale made by defendants and the legal remedy for the breach was simple and adequate. The present case differs in that the breach was found to be material, damages cannot be determined

with certainty, and the contract allocates to the covenant a separate consideration which may be restored without allowing Interstate to retain benefits without payment of substantial value.

Ennis urges that restitution of the entire consideration received by him for the covenant is inequitable because Interstate is not shown to have suffered any economic loss. While conceding that he represented at least one of Interstate's former accounts and made sales to some of its former customers, Ennis points to the increase in Interstate's gross sales during each year the covenant was in effect. It is apparent that, compared to its gross sales, the earnings which Interstate might have realized from known sales made by Ennis are nominal. However, the question is not whether Interstate suffered economic loss, but rather, as pointed out by Williston, whether there was such a failure of consideration as to authorize restitution upon equitable grounds. 12 S. Williston on Contracts, *supra*, at 40–42. We have concluded that there was.

■ The same rationale applies to Ennis' contention that Interstate has an adequate remedy at law for damages. Interstate could not establish with certainty that, but for sales made by Ennis, it would have sold to the same customer at the same price and at the same commission. Recognizing this, it abandoned its claim for damages and sought return of the consideration paid by it for the covenant. This election is available to it under principles of equity. *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071 (1904); *Cantu v. Bage*, 467 S.W.2d 680, 682 (Tex.Civ.App. —Beaumont 1971, no writ). Interstate proved a sampling of the sales made to its customers to demonstrate the breach. It could not prove with certainty the damage flowing from the sales. The material injury shown by the proof was the loss of the consideration paid for a covenant which Ennis failed to perform.

■ Ennis contends, however, that Interstate failed to plead that it was without adequate remedy at law. No contention is made of a lack of notice of the proof to be offered in this regard. Interstate's petition expressly alleged that it sought rescission and prayed for no other relief. No defect in the pleading was called to the attention of the trial court by exception or otherwise prior to the filing of motion for new trial. We hold that, under these circumstances, the defect in pleading was waived. *Humphrey v. Showalter*, 283 S.W.2d 91 (Tex.Civ. App.—Eastland 1955, writ ref'd n.r.e.); Tex.R.Civ.P. 90; *see also* 2 R. McDonald § 5.18 at 48–54 (rev. 1970).

■ Finally, Ennis complains that the restriction was unreasonably broad as to time and area and that the trial court erred in failing to reform it prior to submission of the case to the jury. We do not agree. The test of unreasonableness is generally stated to be whether the restraint is reasonably necessary to protect the business and good will of the employer. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). Here the primary interest sought to be protected was Interstate's Frigidaire distributorship, and the area protected by the covenant was generally coextensive with the area of that franchise. On the other hand, even if the restraint is unreasonable insofar as it relates to "potential customers" and to "geographical areas in which Interstate conducts any business activity," such overbreadth would not bar Interstate's claim for rescission and restitution. If enforcement by injunction were sought, the court could reform the covenant by limiting its operation to a reasonable area. *Id.*, 340 S.W.2d at 953. Here, the relief sought is neither damages nor injunction. The contract is not sought to be enforced but to be rescinded. This remedy need not be denied because the covenant is partially invalid. *See Trammell v. San Antonio Life Insurance Co.*, 209 S.W. 786, 789 (Tex.Civ.App.—San Antonio 1919, writ ref'd); *Federal Life Insurance Co. v. Hoskins*, 185 S.W. 607, 609 (Tex.Civ.App.—Dallas 1916, no writ); *McCall v. Whaley*, 52

Tex.Civ.App. 646, 115 S.W. 658, 659 (—1909, no writ). Furthermore, the proof offered by Interstate upon which the jury must have based its verdict was limited to actual rather than potential customers and to the limited geographical area in which Interstate conducted its business. We conclude that no harm is shown by reason of the court's failure to reform the covenant prior to submission of the case.

By cross-point, Interstate complains that the trial court erred in failing to award prejudgment interest from the date of its payment to appellant. While the pleadings and prayer made no mention of interest, it is recoverable as a matter of law when awarded as compensation for detention of money rather than as an element of damages. However, in either case the amount of recovery must be liquidated or calculable and the "time the injury is inflicted" must be specific. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 660 (Tex.1979); *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83, 89 (1955); *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11, 12 (1897). Here, both parties concede that the amount paid was evidenced by a note, but Interstate does not point out to us when the note was paid. Because interest is recoverable as compensation for detention of money, this date must be proved. We therefore overrule appellee's cross-point.

Affirmed.