Andy COSTLEY and Cathy
Costley, Appellants,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellee.

No. 07–92–0005–CV.

Court of Appeals of Texas,
Amarillo.

March 29, 1994.

Opinion Overruling Rehearing
May 13, 1994.

Hamker & Walton (Ed Walton and Jeffrey W. Shell), Amarillo, for appellants.

Kenneth S. Carroll, Dallas, William W. Kilgarlin, Austin, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

### ON REMAND FROM THE SUPREME COURT

BOYD, Justice.

Appellants Andy Costley (Andy) and Cathy Costley (Cathy) bring this appeal from a 1991 judgment in favor of appellee State Farm Fire and Casualty Company wherein appellee was allowed to rescind a Homeowners Insurance Policy issued to appellants. For reasons later stated, we reverse that judgment.

For a proper discussion of the issues in this appeal, it is necessary to review the somewhat complicated history leading to the judgment challenged by this appeal. On December 31, 1988, Cathy's truck, tractor, and other personal property were destroyed by fire while parked on Andy's father's property. In its first amended petition seeking the judgment in question here, appellee alleged

that on or about January 12, 1990, Andy and Cathy filed suit against Andy's father, Robert Costley (Robert), for the losses incurred. On September 11, 1990, Andy, not joined by Cathy, non-suited the action against Robert as far as Andy was concerned. On or about October 3, 1990, Robert, in turn, filed a third-party action against Andy, alleging that the losses Cathy suffered were due to Andy's negligent conduct and seeking contribution or indemnity for any damages to which he might ultimately be held liable to Cathy for.

On or about October 31, 1990, Cathy's attorney gave written notice to appellee of Robert's action against Andy and, on Andy's behalf, demanded that appellee furnish Andy a defense. In response to that notice, albeit subject to its right to deny coverage under the policy, appellee retained Amarillo attorney Herman Jesko (Jesko) to represent Andy. Andy, however, refused to allow Jesko to defend him unless appellee withdrew its reservation of right. Upon appellee's refusal to withdraw its reservation, Andy retained another Amarillo attorney, Rick Keffler (Keffler), to defend him. Pending its determination of whether coverage was due Andy, appellee agreed to pay Keffler's fees and expenses.

Appellee further alleged in its petition that on or about January 18, 1991, it determined that coverage was due and advised Andy of that determination. Appellee also advised Andy that it was withdrawing its reservation of right. Later, assertedly being dissatisfied with Keffler's representation, appellee retained another Amarillo attorney, Kelly Utsinger (Utsinger), to defend Andy who, upon notification, declined to agree to the substitution. On March 12, 1991, appellee notified Andy that it viewed his refusal to accept Utsinger's representation as a breach of duty under his policy and, if continued, his refusal would be regarded as a repudiation of the insurance policy.

In response to the March 12, 1991 notification, Andy indicated to appellee that he refused to allow Utsinger to represent him because Utsinger's firm had represented an adverse party in another lawsuit involving one of Andy's family members. Although asserting that it did not agree with Andy's refusal, appellee nonetheless retained another attorney, Marvin Jones (Jones), to represent Andy. On March 28, 1991, without giving a reason, Andy again notified appellee that he was unwilling to accept the attorney appellee had retained. Instead, Andy asserted that he now wanted Keffler to continue to represent him. On April 3, 1991, appellee notified Andy that it considered his last refusal of furnished representation to be without good cause and deemed the refusal a repudiation of the policy.

On April 9, 1991, appellee filed this suit for declaratory judgment seeking a holding that: (1) Andy had repudiated the issued policy; (2) appellee was entitled to rescind the policy on account of Andy's repudiation; (3) no coverage existed under the policy; and (4) appellee was under no duty to defend Andy.

On June 7, 1991, appellee filed its first amended petition in which it added Cathy as a defendant and, in addition to the allegations mentioned above, alleged that on or about April 15, 1991, appellants entered into an agreed judgment with Robert, such judgment providing that Cathy would recover $250,000 from Robert, Robert would recover $250,000 from Andy, and all costs of court would be taxed against Andy. Appellee also asserted that it was willing to restore all premiums Andy and Cathy had paid toward the policy, with the exception that it should be entitled to a credit for the defense costs it had expended on Andy's behalf.

Neither Andy or Cathy filed an answer to appellee's suit. That failure resulted in the default judgment now on appeal. Appellants filed a motion for new trial which was denied by order as to Andy and by operation of law as to Cathy.

In a previous opinion, this court held that the default judgment entered against appellants was a nullity because appellee's substituted service of citation upon Andy and Cathy was invalid. *Costley v. State Farm Fire and Cas. Co.*, 844 S.W.2d 939, 941–42 (Tex. App.—Amarillo 1993). The Texas Supreme Court, however, found that appellee's substituted service was effective as to Andy and reversed and remanded the case to us for consideration of his remaining points of er-

ror.[1] *State Farm Fire and Casualty Co. v. Costley,* 868 S.W.2d 298 (1993) (per curiam). In accordance with that remand, we now address Andy's remaining points of error.

As we have noted, both Andy and Cathy were the original appellants. They raised six points of error in which they contended the trial court erred in: (1) granting appellee's motion for substitute service of process because it failed to comply with Rule 106 of the Texas Rules of Civil Procedure; (2) granting appellee's motion for modification of substitute service of process for the reason that appellee failed to comply with Rule 106; (3) entering the default judgment because appellants had not been served with the citation and petition or, alternatively, because service was defective; (4) failing to grant the motions for new trial for the reason that appellants established their right to a new trial pursuant to the seminal case of *Craddock v. Sunshine Bus Lines;*[2] (5) entering judgment in favor of appellee because it was not entitled to the remedy of rescission; and (6) failing to enter a take-nothing judgment for the reason that appellee elected a remedy to which it was not entitled or, in the alternative, appellee was not entitled to judgment under any theory pled.

On original submission, this court addressed appellants' third point of error regarding defective service. Their first point of error, that the substitute service was invalid for failure to comply with Rule 106 of the Texas Rules of Civil Procedure,[3] was disposed of by the Texas Supreme Court's opinion. *See State Farm,* 868 S.W.2d at 298. The supreme court also decided appellants' second point, holding that the trial court did not err when it allowed substitute service on Andy. As far as Cathy is concerned, the remainder of the points were mooted as a result of appellee's failure to appeal this court's reversal of her default judgment.

In Andy's fourth point of error, he asserts that the trial court erred when it denied his motion for a new trial. Both parties agree that Andy's right to a new trial after the no-answer default judgment is governed by the three-part test set out by our supreme court in *Craddock v. Sunshine Bus Lines.* To be entitled to a new trial under *Craddock,* the movant must show that:

(1) his failure to answer was not intentional or the result of conscious indifference on his part, but was due to accident or mistake;

(2) the motion for new trial alleges a meritorious defense; and

(3) the motion is filed at a time when the granting of a new trial will not occasion delay or work other injury to the plaintiff.

*Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 82–83 (Tex.1992); *Craddock,* 133 S.W.2d at 126. We must, therefore, determine whether appellant's motion for new trial satisfied these requirements.

In his motion for new trial, appellant asserted that he did not file an answer to appellee's suit because he believed that he had never been served with citation. It is now clear that the substituted service authorized by the trial court and used by appellee was sufficient. *State Farm Fire and Casualty Co. v. Costley,* 868 S.W.2d at 298. In the absence of any allegation that he failed to answer due to accident, appellant's argument must be that his failure to answer was due to mistake. Indeed, a mistake of law can be sufficient to satisfy the first prong of the *Craddock* test. *Bank One,* 830 S.W.2d at 84. *See also Dowell v. Winters,* 20 Tex. 793 (1858) (confirming that Texas has long considered a mistake of law to be sufficient grounds for a new trial).

At the hearing on the motion for new trial, appellant testified that he did not read any mail sent to him by appellee's attorney, rather, he forwarded it, unopened, to his attorney. When a defendant relies on an agent to answer a suit and that agent fails to do so, in order to be entitled to a new trial, the defendant must show that the failure to

---

1. Appellee conceded that service on Cathy was invalid and did not appeal that portion of the judgment. We will refer to appellant Andy singularly as he is now the only appellant before this court.

2. *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124 (1939).

3. Tex.R.Civ.P. 106.

answer was due to the mistake of the defendant *and* his agent and that both were free of conscious indifference. *Holt Atherton Industries, Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); *Harris v. Lebow,* 363 S.W.2d 184, 186 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). Since appellant changed attorneys during the period in which appellee was attempting to serve him with citation, we must first determine if appellant was relying upon an attorney to answer the suit and, if so, upon which attorney.

Appellant's first attorney, Keffler, represented appellant in the negligence action brought by Robert. As we noted above, an agreed judgment was entered in that case on or about April 15, 1991, after which time appellant asked Keffler for the case file. Some time in early May, Keffler delivered the file to appellant who, in turn, gave the file to a new attorney, Ed Walton. Again, as we noted above, appellee's suit for declaratory judgment was filed on April 9, 1991, however, no return of service was filed until July 25 of that year. As a court may not enter a default judgment until a return of service has been on file for ten (10) days,[4] it is apparent that at the time the answer was due to be filed in the declaratory judgment action, appellant's file was in the possession of his new attorney.[5]

In appellant's motion for new trial, appellant's attorney asserted that he was of the opinion that appellant had not been properly served in the declaratory action. However, the fact that appellant and his attorney argued this position in the motion for new trial does not change the fact that the failure to answer was, in fact, a mistake of law capable of satisfying the first element of *Craddock.*

That being the case, it is not of consequence that appellant did not argue, in the motion for new trial, that his failure to answer was due to a mistake. A defendant who moves for a new trial after a default judgment is taken cannot be forced to choose between admitting that their position is mistaken, thereby waiving any possibility of appeal on that theory, or arguing that their theory is correct and then be denied a finding that the failure to file an answer was due to a mistake. Therefore, we find that appellant's mistaken belief that he had not been correctly served with citation is sufficient to satisfy the first element of the *Craddock* test.

 The second element of the *Craddock* test requires that appellant's motion for new trial set up a meritorious defense.[6] The existence of a meritorious defense must be alleged in the motion and supported by affidavits or other evidence of the defense sufficient to make a prima facie showing of a meritorious defense. *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966). If the motion and supporting evidence are sufficient to make such a prima facie showing, the court may not deny the motion based on counter-affidavits or contradictory testimony. *Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 392 (Tex.1993).

In appellant's motion for new trial, he only makes two assertions that could plausibly raise a defense to appellee's claim of failure to cooperate. First, he alleges that appellee initially refused to provide him a defense and, second, he maintains that he did not fail to cooperate in his defense.

In addressing this issue we must first examine, in more detail, the circumstances surrounding appellant's defense in the suit brought against him by his father, Robert. The following chronology is taken from appellant's affidavit and various exhibits made a part of the record.[7]

Five days before the answer was due in the case, appellant notified appellee that he had been sued and, further, that he expected appellee to provide a defense and indemnify him up to the limits of the policy. Pursuant

---

4. Tex.R.Civ.P. 107.

5. Walton continues to represent appellant in this appeal.

6. As appellant had constructive notice of the suit due to effective service, the limitations on the meritorious defense requirements recognized in *Lopez v. Lopez,* 757 S.W.2d 721 (Tex.1988), do not apply. *Kimble v. Aetna Cas. and Sur. Co.,* 767 S.W.2d 846, 851 (Tex.App.—Amarillo 1989, writ denied).

7. These exhibits consist primarily of letters between the various parties.

to its contractual obligation to defend its insured, appellee secured the services of attorney Jesko, who filed a timely answer on behalf of appellant. Due to the short period of time between receiving notice of the suit and the date when an answer was due, appellee had no opportunity to determine if the claim asserted against appellant was covered by the policy. Because of that lack of opportunity, appellee reserved its rights under the policy, such action resulting in appellant's refusal of Jesko's services.

As recited above, appellee subsequently agreed to pay Keffler, the attorney appellant had retained.[8] However, after appellee determined that the claim asserted against appellant was covered under the policy and withdrew its reservation of rights, it became concerned about the defense being provided by Keffler. Appellee advised appellant of the specific basis for its concern and offered the services of several other attorneys to replace or assist Keffler. Appellant refused each of these offers without responding to any of appellee's concerns about Keffler's defense.

In support of his argument that appellee initially failed to provide him a defense, appellant reasons that a defense tendered under a reservation of rights is a limited or incomplete defense. However, the defense of an insured against a claim by a third party and the question of the insurance company's liability on the insurance contract are separate and distinct issues. When, as here, an insurer must provide a defense for an insured before it can determine whether the claim is covered by an insurance policy, an insurer must be able to offer that defense without waiving any defenses it may have to liability under the policy. In this case, the defense offered to appellant was through outside counsel who would owe appellant the same type of unqualified loyalty he would owe if originally employed by appellant. *Employers Casualty Company v. Tilley*, 496 S.W.2d 552, 558 (Tex.1973); *Automobile Underwriters' Ins. Co. v. Long*, 63 S.W.2d 356, 358–59 (Tex.Comm.App.1933). There is

nothing, other than appellant's misunderstanding of the reservation of rights, to indicate that the defense offered by Jesko was limited or incomplete. Jesko was not involved in investigating the question of the insurer's liability under the policy, nor was appellee's tender of a defense conditioned on a determination that the claim was covered. *Cf. Y.M.C.A. of Metro. Fort Worth v. Com. St. Ins.*, 552 S.W.2d 497, 499 (Tex.Civ.App.—Fort Worth 1977), *writ ref'd n.r.e. per curiam*, 563 S.W.2d 246 (Tex.1978). Here, it was appellant who failed to immediately forward the complaint to appellee, refused to be defended by each of the attorneys tendered by appellee, and failed to respond to appellee's concerns about how the defense was being conducted.

We find no factual allegations in appellant's motion for new trial, the affidavits supporting the motion, or any testimony offered by him at the hearing on the motion that show that he cooperated with appellee in presenting an adequate defense to the suit brought against him. In the absence of such factual assertions and supporting evidence, we find that appellant's motion for new trial failed to set up a meritorious defense as required so as to entitle him to a new trial. Appellant's fourth point of error is overruled.

■ In his fifth point, appellant contends that the trial court erred in rescinding the insurance contract because appellee was not entitled to the remedy of rescission. Although not presented in the motion for new trial or its supporting affidavits, appellant's complaint on this point was preserved by his argument to the trial court at the hearing on the motion for new trial. Tex.R.App.P. 52(a). Appellant's position is that any failure on his part to cooperate in his defense would be a simple breach of contract and not a repudiation as urged by appellee. He further argues that rescission is not a proper remedy for breach of contract in the absence of fraud or mistake.

■ We agree with appellant that a failure to cooperate as required by a contract

---

8. Appellant accepted Keffler's representation even though appellee had not yet withdrawn its reservation of rights.

results in a breach of that instrument rather than a repudiation. Repudiation of a contract arises when one party to the contract, by unconditional words or actions, refuses to perform his obligation under the contract prior to the time when such performance is due. 14 Tex.Jur.3d *Contracts* § 306 (1981). Repudiation of a contract by one party gives rise to a right of rescission when such repudiation is accepted by the other party. *Gage v. Wimberley*, 476 S.W.2d 724, 731 (Tex.Civ. App.—Tyler 1972, writ ref'd n.r.e.); *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071 (1904). As we view a failure to cooperate as a breach of the contract rather than a repudiation, we must determine if rescission is an appropriate remedy for such a breach.

For the proposition that rescission may not be granted for the breach of a contract, appellant cites several cases decided prior to 1970.[9] Although reiterating the rule that rescission will ordinarily be denied when full relief at law can be provided, the more recent decisions permit unilateral rescission of a contract if there is a breach in a material part. *Ennis v. Interstate Distributors, Inc.*, 598 S.W.2d 903, 906 (Tex.Civ.App.—Dallas 1980, no writ). *See also Allen v. Allen*, 751 S.W.2d 567, 575 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Boyter v. MCR Constr. Co.*, 673 S.W.2d 938, 941 (Tex.App.— Dallas 1984, writ ref'd n.r.e.). It has even been held that a partial breach is sufficient if it goes to the essence of the contract. *Ennis*, 598 S.W.2d at 906; *Atkins v. Beasley*, 544 S.W.2d 505, 507 (Tex.Civ.App.—Waco 1976, no writ).

In any event, appellant argues that rescission was not available in this case because appellee had an adequate remedy at law inasmuch as it could, and did, ask for reimbursement of its expenses in defending appellant in the negligence action. That argu-

ment, however, overlooks the fact that appellee was exposed to liability under the $100,-000 insurance contract and that this potential for liability merited the cooperation of appellant, its insured. Such cooperation was necessary in order for appellee to determine the amount, and probability, of its possible liability, as well as to properly analyze and defend any suit brought against appellant as the insured party. Because of that necessity, any failure, on appellant's part, to cooperate was material and went to the essence of the contract. Thus, an action for damages or to recover defense expenses were not adequate remedies at law.

Although appellee might avoid liability under the contract by raising appellant's failure to cooperate as a defense to any action brought to recover under the policy,[10] it still would have lost the valuable right to participate in the trial determining the negligence of its insured as well as requiring yet another lawsuit. Under all of these circumstances, we do not consider that course of action to be an adequate remedy at law. Considered in terms of the prevailing approach taken by other Texas courts, we find that the trial court did not err in considering the availability of the remedy of rescission for appellee. Appellant's fifth point is overruled.

Appellant's sixth point of error is based on the proposition that when a party elects a remedy to which it is not entitled, it waives recovery under all other theories. Our disposition of appellant's fifth point of error obviates the necessity to discuss this point.

After remand from the Texas Supreme Court, we granted motions for leave to file supplemental briefs in this case. Appellant raises an additional point in his supplemental brief which we now address and find to be dispositive of this appeal. In that point, he contends that as the judgment allowing rescission of the insurance contract as to his

---

9. Appellant cites *Tuchin v. Chambers*, 439 S.W.2d 849 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.); *Crabtree v. Burkett*, 433 S.W.2d 9 (Tex.Civ.App.—Beaumont 1968, no writ); *Freyer v. Michels*, 360 S.W.2d 559, 561 (Tex.Civ. App.—Dallas 1962, writ dism'd w.o.j.); *Chenault v. County of Shelby*, 320 S.W.2d 431, 435 (Tex. Civ.App.—Austin 1959, writ ref'd n.r.e.); *Lanford v. Parsons*, 237 S.W.2d 425, 430 (Tex.Civ.App.— Austin 1951, writ ref'd n.r.e.). Although appel-

lant also cites the more recent case of *Printing Ctr. of Texas v. Supermind Pub. Co.*, 669 S.W.2d 779 (Tex.App.—Houston [14th Dist.] 1984, no writ), we find that case inapplicable.

10. *Universal Automobile Ins. Co. v. Culberson*, 54 S.W.2d 1061, 1062 (Tex.Civ.App.—Waco 1932), *aff'd*, 126 Tex. 282, 86 S.W.2d 727 (1935).

wife, Cathy, was reversed, the default judgment against him must also fail. The thrust of his argument is that Cathy's rights under the contract are so interwoven or dependent upon his rights that a rescission of the contract as to only one of them is improper.

In response, appellee argues that (1) appellant waived this point by failing to raise it on original submission, and (2) the reversal as to Cathy does not require reversal as to appellant. We do not agree with either of appellee's arguments.

■ Initially, appellant did not waive his right to assert his additional point of error at this time. The issue presented in the additional point did not even arise until appellee conceded the ineffectiveness of service on Cathy during the original submission in this court. Although it was conceivable that service would be found to be invalid for only one of the appellants, there is nothing in appellee's original brief to indicate that it would concede the ineffectiveness of service as to only one appellant.[11] Under these circumstances, and after the remand to this court, it was proper for appellant to present the additional issue for appellate determination.

■ Both parties suggest that the case of *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160 (Tex.1982) is dispositive of the issue of whether the reversal of the default judgment against Cathy also requires reversal of the judgment against appellant. We disagree. The *Turner* case involved multiple claims, including a claim of indemnification and a cross-claim, between the parties to two different contracts. *Id.* at 162–63. In that case, the issue discussed by the court, as relevant here, was whether the reversal and remand of only one of the claims would create a possibility of inconsistent judgments. *Id.* at 166. Here, however, we are presented with the question of the permissibility of a partial rescission relating to only two of the three parties to an insurance contract. We find that such a result is not permissible.

■ It is the longstanding general rule in Texas that a rescission of a contract must be in toto. *Demaret v. Bennett*, 29 Tex. 262, 269 (1867); *O'Con v. Hightower*, 268 S.W.2d 321, 322 (Tex.Civ.App.—San Antonio 1954, writ ref'd); 10 Tex.Jur.3d *Cancellation and Reformation* § 97 (1980); 14 Tex.Jur.3d *Contracts* § 324 (1981); 17 C.J.S. *Contracts* § 416 (1963). A partial rescission will only be allowed if the provision sought to be rescinded is entirely divisible from the rest of the contract, *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708 (Tex.1982); *Ashby v. Gibbon*, 69 S.W.2d 445, 447 (Tex. Civ.App.—Amarillo 1934, no writ), or if there are "extreme" circumstances, *O'Con*, 268 S.W.2d at 322.

This contract insured appellant and his wife, Cathy, from loss for the damage or destruction of their property and from liability for their negligent acts. Given the nature of the contract, we cannot say that the provisions insuring appellant are entirely divisible from those insuring Cathy so as to allow partial rescission. *See Hanks*, 644 S.W.2d at 707–09.

■ Additionally, rescission of a contract is not allowed unless the parties are restored to the positions they were in before the contract was made. *Leonard v. Eskew*, 731 S.W.2d 124, 131 (Tex.App.—Austin 1987, writ ref'd n.r.e.). In this case, restoration would require that appellee return all of the premium payments made by the insureds.

Albeit with a claim that it was entitled to a credit for defense costs expended on Andy's behalf, appellee alleged in its first amended petition that it "was ready, willing and able to restore Defendants to the positions they were in prior to their contracting with Plaintiff, by paying to Defendants all premiums received by Plaintiff in connection with said policy of insurance." However, no division or other disposition of tendered premiums was made in the judgment. If the entire payment were returned, Cathy's contract with appellee would fail for lack of consideration with consequent prejudice to her. Reiterated, that portion of the judgment re-

11. In the six pages of appellee's original brief used to reply to appellants' third point of error (on service of process), appellants are referred to together except for two paragraphs on pages 21 and 22. Even where appellants presented a separate point of error concerning service on Cathy, appellee responded to the points together "to avoid repetition."

scinding the insurance policy as far as Cathy is concerned has been reversed. There is nothing in this record that demonstrates, without prejudicing Cathy's rights, what portion of the premiums received, if any, could be repaid to appellant in order to return him to the position he was in before entering the contract. Under the surrounding circumstances, the rights of Cathy and Andy are so intertwined and intermingled that we must hold the contract was indivisible as between them.

We also find that this case does not present the "exceptional" circumstances necessary to justify partial rescission of an indivisible contract. In *O'Con v. Hightower*, 268 S.W.2d 321 (Tex.Civ.App.—San Antonio 1954, writ ref'd), the plaintiff purchased the defendant's business, thereby financing a portion of the purchase price with a promissory note for $3,000. *O'Con*, 268 S.W.2d at 322. Upon discovering undisclosed debts and liens on the property in excess of the note, the plaintiff sought rescission of the note. Based on the defendant's fraud, the trial court declared the note void while upholding the remainder of the sale. Likewise, in *Thompson v. Williams*, 246 S.W.2d 506, 509 (Tex.Civ.App.—Austin 1952, writ ref'd n.r.e.), the court allowed a partial rescission of a promissory note based on fraud where the court could accurately calculate the proper dollar amount to rescind. The present case, however, does not allow such precision.

Our rulings on appellant's first six points would ordinarily result in an affirmance of the judgment rescinding appellee's insurance contract insofar as Andy is concerned. However, because of the reversal of the trial court judgment insofar as Cathy is concerned, the partial rescission which would result from that sequence of events is impermissible. We must, therefore, reverse the judgment of the trial court and remand the cause to the trial court for a new trial.

## ON MOTIONS FOR REHEARING

BOYD, Justice.

Both appellants and appellee have filed motions for rehearing. In their motion for rehearing, appellants contend that this court erred in failing to address their sixth point of error. We remain convinced that our disposition of appellants' fifth point obviated the necessity for discussion of their sixth point. Consequently, appellants' motion for rehearing is overruled.

In its motion for rehearing, appellee raises two points of error. In its first point, appellee challenges our consideration of the point raised by appellants in their supplemental brief concerning the effect of a reversal of the default judgment against Cathy but not against Andy. Appellee continues to argue that the point of error was waived because it was not raised prior to the original submission of this case before us. In support of that proposition, it relies upon *Canales v. National Union Fire Insurance Company*, 763 S.W.2d 20, 23 (Tex.App.—Corpus Christi 1988, writ denied).

In *Canales*, the appellate court declined to consider sufficiency of the evidence points untimely raised by appellant in a post-submission brief. *Id.* at 23. In doing so, the court cited Rule 74(*o*) of the Texas Rules of Appellate Procedure, a local rule, and the case of *Linan v. Linan*, 632 S.W.2d 155 (Tex.App.—Corpus Christi 1982, no writ).[1]

In pertinent part, Rule 74(*o*) provides:

*Amendment or Supplementation.* Briefs may be amended or supplemented at any time when justice requires upon such reasonable terms as the court may prescribe, and if the court shall strike or refuse to consider any part of a brief, the court shall on reasonable terms allow the same to be amended or supplemented.

In the *Linan* case, the appellate court commented that it was "authorized to permit the filing of amended briefs, including additional points of error not originally submitted, even after submission and the rendition of an opinion." *Linan*, 632 S.W.2d at 156 (opinion on motion for rehearing). The court specifically

---

1. The court also noted that the additional points concerned evidence questions previously discussed in points raised in appellant's initial brief.

noted, however, that it was not mandatory that it do so.

■ Suffice it to say, we think it is within the discretion of an appellate court to permit the filing of supplemental briefs "when justice requires." Under the history of this case, which we set out in our original opinion on remand, we remain convinced that, after the remand to us, it was proper to consider the point appellants raised in their supplemental brief. *Cf. Garrett v. State,* 749 S.W.2d 784 (Tex.Crim.App.1986).

Without citation of relevant authority, appellee additionally argues that "under the well established rules of appellate procedure," the Texas Supreme Court's remand of this case for consideration of appellants' unaddressed points of error limited our consideration to only those points presented on original submission. We do not agree. The high court remanded this case for the purpose of allowing this court to consider any matters pertinent to a proper disposition of the case which had not been discussed in our first opinion. Appellee's first point is overruled.

In its second point, appellee contends that this court erred in finding that the subject insurance policy was not divisible between Andy and Cathy. Specifically, appellee argues that Andy and Cathy were each individual insureds under the policy and the fact that they jointly owned the policy was "irrelevant." We do not agree that the fact that the insurance contract was jointly owned and intended to insure both Cathy and Andy is irrelevant. We remain convinced that changing a policy that protects two owners, to one that protects only one owner, is a material alteration of a policy which is not divisible between the joint owners. Appellee's second point is overruled.

In its third point, appellee argues that we erred in holding that there was evidence at the hearing on the motion for new trial that Andy's attorney was mistaken as to the legal adequacy of substitute service on Andy. Appellee further argues that, even if there was such evidence, such a legal mistake is not, as a matter of law, sufficient to meet the first prong of the *Craddock v. Sunshine Bus Lines* [2] test. Parenthetically, we overruled Andy's point of error in which he argued he had established his right to a new trial pursuant to *Craddock.* Moreover, a careful reading of our original opinion reveals that our ruling was based on Andy's failure to meet the second prong of the *Craddock* test.

Initially, in our original opinion, we did not say there was *evidence* at the hearing on the motion for new trial that Andy's attorney was mistaken as to the legal adequacy of service upon his client. Rather, after noting that Andy's attorney had argued in the motion that service upon Andy was inadequate, we commented that "it is not of consequence that appellant did not argue, in the motion for new trial, that his failure to answer was a mistake." Indeed, it was not until after the opinion of the Texas Supreme Court that it was determined that Andy's reliance upon inadequate service in failing to answer the suit was mistaken. We remain convinced that the record is sufficient to establish that Andy's failure to file an answer was not deliberate, but was the result of a mistake of law.

Citing *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81 (Tex.1992), appellee also argues that even if the record was sufficient to establish that Andy's attorney received the citation and erroneously concluded that it was necessary to file an answer, that such error was not a mistake of law sufficient to satisfy the first prong of the *Craddock* test. However, we note that in *Moody,* the court held that the first prong of the test was met when Bank One failed to file an answer due to its mistaken belief that "freezing the accounts and submitting a check for the balance on the accounts was a sufficient answer." *Id.* at 84. Bank One's mistake of law is similar to the one here. We remain convinced that our original disposition of the appeal is correct and overrule all three of appellee's points of error.

In summary, both appellants' and appellee's motions for rehearing are overruled.

---

2. 134 Tex. 388, 133 S.W.2d 124 (1939).